**Richard N. VanCleave,** OSB No. 80392
rvancleave@barran.com
**Brenda K. Baumgart,** OSB No. 99216
bbaumgart@barran.com
BARRAN LIEBMAN LLP
601 SW Second Ave., Suite 2300
Portland, Oregon  97204-3159
Telephone: (503) 228-0500
Facsimile:  (503) 274-1212

Attorneys for Defendants
Dell Inc. and Dell Marketing USA, L.P.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| DAVID NORMAN and WALTER ROMAS, individually, and on behalf of a class of others similarly situated,<br><br>                         Plaintiffs,<br><br>    v.<br><br>DELL INC.; and DELL MARKETING USA, L.P., and<br><br>SPHERION CORPORATION,<br><br>                       Defendants. | **CV. 07-6028-TC**<br><br>**DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23** |

**DATE:  February 29, 2008**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  FACTUAL BACKGROUND.......................................................................... 2

     A.   THE PARTIES………………………………………………………… 2

     B.   STAFFING STRUCTURE……………………………………………... 5

     C.   TIMEKEEPING SYSTEMS…………………………………………... 6

III. ARGUMENT ................................................................................................. 9

     A.   PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A FLSA COLLECTIVE ACTION AND FOR COURT AUTHORIZED NOTICE SHOULD BE DENIED BECAUSE PLAINTIFFS AND ALL MEMBERS OF THE PUTATIVE CLASS ARE NOT SIMILARY SITUATED……………………………………… 9

          1.   Plaintiffs and Putative Class Members Were Not Victims of a Common Plan or Policy That Violated the Law……………………………………………… 10

          2.   Dell's Incentive Policies Are Not Unlawful………………………………… 26

          3.   Plaintiffs' "Off the Clock" Claims Do Not Establish That a Common Plan or Policy Violated the Law and, in Any Event, Such Claims Would Require Individualized Findings Inappropriate for Collective Action Treatment.......... 29

     B.   CERTIFICATION OF A CLASS ACTION UNDER OREGON LAW/RULE 23 SHOULD BE DENIED………………………………………………………... 35

          1.   Plaintiffs Cannot Satisfy the Requirements of Rule 23(a)……………….…...37

          2.   Plaintiffs Cannot Satisfy Any of the Requirements of Rule 23(b)……………39

          3.   There is no Basis for the Court to Assert Supplemental Jurisdiction Over Individuals Who do not Opt-in to a Collective Action…………………….    43

     C.   IF A COLLECTIVE ACTION IS CERTIFIED UNDER THE FLSA, WHICH IT SHOULD NOT BE, IT SHOULD BE LIMITED TO FORMER FULL-TIME EMPLOYEES EMPLOYED AT DELL'S NOW CLOSED ROSEBURG, OREGON CALL CENTER DURING THE FEBRUARY 8, 2004, THROUGH AUGUST 4, 2007, TIME PERIOD………....................................................................45

     D.   IF A COLLECTIVE ACTION UNDER THE FLSA AND/OR A CLASS ACTION UNDER OREGON LAW/RULE 23 IS CERTIFIED, WHICH THEY SHOULD NOT BE, DELL SHOULD NOT BE REQUIRED TO PRODUCE EMPLOYEE AND/OR FORMER EMPLOYEE ADDRESSES, TELEPHONE NUMBERS AND SOCIAL SECURITY NUMBERS……………………………46

IV.  CONCLUSION.............................................................................................48

i

## TABLE OF AUTHORITIES

**Cases**

*Acton v. City of Columbia, Mo.*,
No. 03-4159-CV-NKL, 2004 WL 2152297 (W.D. Mo. Sept. 10, 2004).................................26

*Allison v. Citgo Petroleum Corp.*,
151 F.3d 402 (5th Cir. 1998) ....................................................................................39

*Anderson v. County of Kershaw*,
172 F.3d 862, 1999 WL 55182 (4th Cir. Oct. Feb. 8, 1999)..................................17

*Bailey v. County of Georgetown*,
94 F.3d 152 (4th Cir. 1996) ...............................................................................12, 15

*Basco v. Wal-Mart Stores, Inc.*,
No. Civ. A. 00-3184, 2004 WL 1497709 (E.D. La. Jul. 2, 2004) ....................30, 44

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
No. 06-0715, 2007 WL 707475 (N.D. Cal. Mar. 6, 2007)......................................10

*Berry v. Baca*,
226 F.R.D. 398 (C.D. Cal. 2005).............................................................................39

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975)....................................................................................37

*Bowoto v. Chevron Corp.*,
No. C 99-02506 SI, 2006 WL 2604592 (C.D. Cal. Aug. 23, 2006)........................29

*Castano v. American Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996)......................................................................................36

*Clark v. Dollar Gen. Corp.*,
No. 3:00-0729, 2001 WL 878887 (M.D. Tenn. May 23, 2001).............................46

*Condo v. Sysco Corp.*,
1 F.3d 599 (7th Cir. 1993).......................................................................................24

*Connee v. Speedee Cash of Mississippi, Inc.*,
No. 06-60377, 2007 WL 2113627 (5th Cir. July 23, 2007)..................................20

*Daggett v. Blind Enterprises of Oregon, et al.*,
95-421-ST, 1996 U.S. Dist. LEXIS 22465 (D. Or. Apr. 18, 1996).........................36

*Davis v. Friendly Exp., Inc.*,
  No. 02-14111, 2003 WL 221488682 (11th Cir. Feb. 6, 2003)..................................14

*Davis, et al. v. Dell Inc., et al.*,
  No. 5:07-cv-01401-W, W.D. Okla. (Dec. 14, 2007) ...........................................2

*De Asencio v. Tyson Foods, Inc.*,
  342 F.3d 301 (3d Cir. 2003), .....................................................................43, 44

*Diaz v. Electronics Boutique of Am., Inc.*,
  No. 04-CV-08402, 2005 U.S. Dist. LEXIS 30382 (W.D. N.Y. Oct. 13, 2005);..............32

*Dinella v. Friedmutter Group*,
  No. 2:05-cv-0938, 2007 WL 956899 (D. Nev. March 29, 2007)...............................12

*Donohue v. Francis Servs., Inc.*,
  No. Civ.A.04-170, 2005 WL 1155860 (E.D. La. May 11, 2005)...............................26

*Dukes v. Wal-Mart, Inc.*,
  509 F.3d 1168 (9th Cir. 2007) .................................................................36, 40

*East Texas Motor Freight Systems, Inc. v. Rodriguez*,
  431 U.S. 395 (1977)................................................................................37

*Evans v. Lowe's Home Centers, Inc.*,
  No. 3:CV-03-0438, 2006 WL 1371073 (M.D. Pa. May 18, 2006) ...........................25

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
  646 F.2d 413 (D. Or. 1981) ...................................................................30, 34

*Garay v. RDO-Bos Farms*,
  No. 06-174-KI, 2007 WL 273604 (D. Or. Jan. 23, 2007)..................................35, 42

*Gonzalez v. Select Onion Co. LLC*,
  2007 WL 1989698 (D. Or. 2007) ...............................................................36

*Grayson v. K Mart Corp.*,
  79 F.3d 1086 (11th Cir. 1996) .................................................................10

*Griffin v. Wake County*,
  142 F.3d 712 (4th Cir. 1998)...................................................................12

*H & R Block Ltd. v. Housden*,
  186 F.R.D. 399, 400 (E. D. Tex. 1999).....................................................10, 26

*Hall v. Burk*,
   No. 301 CV 2487H, 2002 WL 413901 (N.D. Tex. Mar. 11, 2002).........................................46

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ......................................................................................36

*Harper v. Lovett's Buffet, Inc.*,
   185 F.R.D. 358 (M.D. Ala. 1999) ...........................................................................31, 46

*Hens v. Client Logic Operating Corp.*,
   No. 05-CV-381S, 2006 WL 2795620 (W.D.N.Y. Sept. 26, 2006).........................................47

*Hoffman La Roche Inc. v. Sperling*,
   493 US 482, 486 (1989) ...........................................................................................10

*Humphries v. Stream Int'l, Inc.*,
   2004 U.S. Dist. LEXIS 220465 (N. D. Tex. Feb. 13, 2004) ..................................................47

*Hunter v. Sprint Corp.*,
   453 F.Supp.2d 44 (D.D.C. 2006) ................................................................................20

*In re American Medical Systems*,
   75 F.3d 1069 (6th Cir. 1996) .....................................................................................36

*In re Farmers Ins. Exch. Claims Representatives Overtime Pay Litigation*,
   No. MDL 1439, 2003 WL 23669376 (D. Or. May 19, 2003) ...............................................35

*Jackson v. City of San Antonio*,
   220 F.R.D. 55 (W.D. Tex. 2003) .................................................................................44

*Johnson v. Clarke*,
   No. C05-5401FDB, 2007 WL 1601292 (W.D. Wash. June 1, 2007).......................................29

*Lawrence v. City of Philadelphia*,
   No. 03-CV-4009, 2004 WL 945139 (E. P. Pa. Apr. 29, 2004) ..............................................31

*Leuthold v. Destination America, Inc.*,
   224 F.R.D. 462 (N.D. Cal. 2004)................................................................................42

*Liberty Lincoln Mercury v. Ford Marketing*,
   149 F.R.D. 65 (D.N.J. 1993) ......................................................................................40

*Lujan v. Nat'l. Wildlife Federation*,
   497 U.S. 871 (1990).................................................................................................29

*McElmurry v. U.S. Bank Nat. Ass'n.*,
  No. CV-04-642-HU, 2005 WL 2078302 (D. Or. July 29, 2005) ............................... 10, 20, 27

*McKnight v. Kimberly Clark Corp.*,
  149 F.3d 1125 (10th Cir. 1998) ........................................................................ 30

*Mertz v. Treetop Enterprises, Inc.*,
  No. CV-96-B-1208-S, 1999 U.S. Dist. LEXIS 18386 (N.D. Ala. Mar. 3, 1999) .................... 31

*Mike v. Safeco Ins. Co. of Am.*,
  223 F.R.D. 50, 53 (D. Conn. 2004) ...................................................................... 38

*Miles v. Vail*,
  No. C06-5319, 2007 WL 2570442 (W.D. Wash. Sept. 4, 2007) ................................. 29

*Mitchell v. Abercrombie & Fitch Co.*,
  428 F.Supp.2d 725 (S.D. Ohio 2006) ................................................................... 24

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) ............................................................................. 40

*Monahan v. County of Chesterfield*,
  95 F.3d 1263 (4th Cir. 1996) ............................................................................. 12

*Muecke v. A-Reliable Auto Parts and Wreckers, Inc.*,
  No. 01 C 2361, 2002 U.S. Dist. LEXIS 11917 (N.D. Ill. June 21, 2002) .......................... 42

*Petty v. Wal-Mart Stores, Inc.*,
  773 N.E.2d 576 (Ohio App. 2d Dist. 2002) ........................................................... 32

*Prosser v. Safeco Ins. Co.*,
  No. CV 00-1512-BR, 2001 WL 34043385 (D. Or. June 18, 2001) .................................. 26

*Riddle v. Nat'l Security Agency, Inc.*,
  No. 05 C 5880, 2007 WL 2746597 (N.D. Ill. Sept. 13, 2007) ...................................... 41

*Robinson-Smith v. Gov't Employees Inc., Co.*,
  No. 01-1340 (PLF), 2001 U.S. Dist. LEXIS 25516 (D.D.C. Nov. 10, 2001) ...................... 47

*Roy v. County of Lexington*,
  948 F.Supp. 529 (D.S.C. 1996) ........................................................................... 25

*Sampson v. Apollo Resources*,
  242 F.3d 629 (5th Cir. 2001) ............................................................................. 22

*Saxton v. Young*,
    479 F.Supp.2d 1243 (N.D. Ala. Mar. 14, 2007) ........................................................ 14, 16, 17

*Sheffield v. Orius Corp.*,
    211 F.R.D. 411 (D. Or. 2002) ................................................................................. 9, 10, 20

*Smith v. T-Mobile USA, Inc.*,
    No. CV-05-05274 ABC, 2007 U.S. Dist. LEXIS 60729 (C. D. Cal. Aug. 15, 2007) ............. 20

*Teblum v. Eckerd Corp. of Fla., Inc.*,
    No. 2:03CV495FTM33DNF, 2006 WL 288932 (M.D. Fla. Feb. 7, 2006) ............................ 14

*Thiebes v. Wal-Mart Stores, Inc.*,
    1999 WL 1081357 (D. Or. 1999) ............................................................................... 10, 41

*Thiebes v. Wal-Mart Stores, Inc.*,
    2002 WL 479840 (D. Or. 2002) .................................................................................. 36, 37

*Thiebes v. Wal-Mart Stores, Inc.*,
    No. 98-802-KI, 1999 WL 1081357 (D. Or. Dec.1, 1999) ................................................. 36

*Thiebes v. Wal-Mart Stores, Inc.*,
    No. 98-802-KI, 2002 WL 479840 (D. Or. Jan. 9, 2002) ................................................... 36

*Thiessen v. Gen. Elec. Capital*,
    267 F.3d 1095 (10th Cir. 2001) .................................................................................... 10

*Torres v. CSK Auto, Inc.*,
    No. EP-03-CA-113(KC), 2003 WL 24330020 (W.D. Tex. Dec. 17, 2003) ........................... 47

*Tucker v. Labor Leasing, Inc.*,
    872 F.Supp. 941 (M.D. Fla. 1994) ................................................................................. 46

*Tumulty v. FedEx Ground Package System, Inc.*,
    No. C04-1425P, 2005 WL 1979104 (W. D. Wash. Apr. 19, 2005) ................................. 12, 15

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ........................................................................................ 41

*Valerio v. Putnam Assoc. Inc.*,
    173 F.3d 35 (1st Cir. 1999) .......................................................................................... 12

*Villanueva v. Sota-Rivera*,
    133 F.3d 92 (1st Cir. 1997) .......................................................................................... 29

*Wal-Mart Stores, Inc. v. Lopez*,
   93 S.W.3d 548 (Tex. App., 14th Dist. 2002, writ denied) ....................................................32

*White v. Osmose, Inc.*,
   204 F.Supp.2d 1309 (M.D. Ala. 2002) ..................................................................................46

*Wilken v. Cascadia Behavioral Health Care, Inc.*,
   No. CV 06-195-ST, 2007 WL 2916482 (D. Or. Oct. 5, 2007)................................... 11, 12, 17

*Wilks v. Pep Boys*,
   No. 3:02-0837, 2006 WL 2792218 (M.D. Tenn. Sept. 26, 2006) ..........................................30

*Wisnewski v. Champion Healthcare Corp.*,
   No. Civ. A 3-96-72, 2000 WL 1474414 (D.N.D.  Jan. 11, 2000) ...........................................27

*Woodard v. FedEx Freight East, Inc.*,
   No. 3:cv-06-1968; 2008 WL 471552 (M.D. Pa. Feb. 19, 2008) ............................................44

*Wright v. Household Intern*,
   No. CV-03-1172-PA, 2004 WL 1526157 (D.Or July 7, 2004) ...............................................36

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ...............................................................................................39

**Statutes**

28 U.S.C.  § 1367.........................................................................................................................43
28 U.S.C. § 1367(c)(1)-(4).............................................................................................................43
28 U.S.C. § 1367(c)(4)...................................................................................................................44
29 U.S.C. § 216(b) ...........................................................................................................9, 42, 44
Or. Rev. Stat. § 653.045.................................................................................................................1
Or. Rev. Stat. § 653.261.................................................................................................................1
Or. Rev. Stat.§ 652.140..................................................................................................................1

**Rules**

FRCP 23(b)(3) ..............................................................................................................................42

Or. R. Civ. P. 32 (2005) ...............................................................................................................35

**Regulations**

29 C.F.R. § 778.114(a)..................................................................................................................24

29 CFR § 778.119 (2006)..............................................................................................................27

Defendants Dell Inc.[1] and Dell Marketing USA, L.P. (collectively "Dell") file this Response in Opposition to Plaintiffs' Motion for Certification under 29 U.S.C. 216(b) and Federal Rule of Civil Procedure 23 ("Motion") and Memorandum filed in support thereof.

## I.    INTRODUCTION

Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA") and Oregon law[2] by (1) misclassifying consumer sales representatives ("CSRs") under the fluctuating workweek ("FWW") method of compensation; (2) failing to properly account for and pay incentive compensation; and (3) requiring CSRs to perform work off the clock.  *See* ¶ 1 of Plaintiffs' Memorandum.

Plaintiffs seek to conditionally certify a nationwide opt-in class under the FLSA of all CSRs who were employed by Dell at any of its call centers from February 8, 2004, to the present and an opt-out class of CSRs under Oregon law pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") of all CSRs employed by Dell at its Roseburg, Oregon call center between February 8, 2004, and August 4, 2007.[3]

To prevail on their request for the Court to certify a collective action under the FLSA, Plaintiffs must demonstrate that they and the putative class were subject to a common policy or

---

[1] Dell Inc. was never Plaintiffs' employer, and it is not a proper Defendant in this case.  *See* Dell Inc.'s Motion to Dismiss which is being filed simultaneously with this Response.

[2] With respect to Plaintiffs and putative class members employed at Dell's now closed Roseburg, Oregon call center, in addition to alleging that Dell violated Or. Rev. Stat. § 653.261 and Or. Admin. R. 839-020-0030 by failing to compensate Oregon employed CSRs for all hours worked and for improperly implementing the FWW method of compensation, Plaintiffs allege that Dell failed to maintain accurate payroll records with respect to Oregon employed CSRs in violation of Or. Rev. Stat. § 653.045; failed to provide Oregon employed CSRs with rest breaks and lunches in violation of Or. Rev. Stat. § 653.261 and Or. Admin. R. 839-020-0050; failed to provide Oregon employed CSRs with their final paychecks; and failed to pay Oregon employed CSRs all wages due at the time of their termination in violation of Or. Rev. Stat.§ 652.140.  Plaintiffs also assert Oregon state law claims for breach of contract and quantum meruit.  *See* Plaintiffs' First Amended Complaint and p. 1 of Plaintiffs' Memorandum.

[3] Dell's Roseburg, Oregon call center actually closed on August 2, 2007, not August 4, 2007. Declaration of Debra Koehn ("Koehn Decl."), ¶ 2; Declaration of Elizabeth Shawn Maurice ("Maurice Decl."), ¶ 4.

Page 1 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

00119869.DOC /                     BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

plan that violated the law and that Plaintiffs and members of the putative class are similarly situated.  Plaintiffs cannot satisfy their burden.  Likewise, Plaintiffs cannot satisfy the prerequisites set forth under Oregon law and Rule 23 for the certification of an opt-out class of all CSRs formerly employed by Dell at its now closed Roseburg, Oregon call center.

Plaintiffs are asking the Court to authorize the sending of a notice advising potential class members that they have the right to opt-in to a FLSA collective action, and if employed by Dell in Roseburg, Oregon, the right to opt-out of an Oregon law/Rule 23 class action involving the same factual allegations.  Such a notice would be contradictory and confusing.

While certification and the issuance of notice would be improper in this case, in the event the Court decides to conditionally certify a class, the certification should be limited to the FLSA claims of full-time CSRs who were employed by Dell at its Roseburg, Oregon call center from February 8, 2004, to the closing on the facility effective August 2, 2007.[4]  An opt-out class under Oregon law/Rule 23 should not be certified.

## II.    FACTUAL BACKGROUND

### A.    THE PARTIES

Dell has operated five consumer call centers in the United States.  The location of these call centers has been:  Roseburg, Oregon; Nashville, Tennessee; Oklahoma City, Oklahoma; Round Rock, Texas; and McGregor/Waco, Texas.  (Maurice Depo.[5] at 23:5-8).

Dell closed its Roseburg, Oregon call center on August 2, 2007, and it closed its McGregor, Texas call center on October 3, 2007.  (Maurice Decl. ¶ 4).  As of January 31, 2008,

---

[4] Another lawsuit seeking certification of what appears to be a national FLSA collective action and a class under Oklahoma law/Rule 23 of sales representatives employed by Dell has been filed in the United States District Court for the Western District of Oklahoma.  *See Davis, et al. v. Dell Inc., et al.*, No. 5:07-cv-01401-W, W.D. Okla. (Dec. 14, 2007).  A copy of the Complaint filed in this case is attached as Attachment A to the Declaration of Jeffrey C. Londa ("Londa Decl.").  The *Davis* plaintiffs make allegations that are worded very much like those made by Plaintiffs in this case.

[5] True and correct copies of excerpts from the deposition transcripts cited to herein are attached in alphabetical order as Exhibits B through W to the Declaration of Brenda K. Baumgart, filed herewith.

Page 2 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

Dell no longer employed any CSRs at its call center in Oklahoma City, Oklahoma.  *Id.*  CSRs are currently employed only at Dell's call centers in Round Rock, Texas, and Nashville, Tennessee. Only Dell's call centers in Roseburg, Oregon and McGregor, Texas exclusively employed CSRs. (Maurice Depo. at 24:5-8).  The other three call centers employed both CSRs and other types of sales representatives who sold Dell's products to businesses and public educational institutions. (Maurice Depo. at 19:11-25; 23:5-15).

Dell currently employs less than 1,000 CSRs[6] who sell computers and related electronics and accessories to customers.  (Maurice Decl. ¶ 4).  Plaintiffs estimate the potential size of a national opt-in class in this case at 5,000.  *See* Plaintiffs' Memorandum at n.6.

Plaintiffs (including all opt-in Plaintiffs) are current and former CSRs employed by either Dell or Spherion[7] at one of the five Dell call centers identified above.  As of February 22, 2008, 184 individuals have opted-in to this lawsuit.  (Londa Decl. ¶ 4).  A geographic breakdown of the call centers where these 184 opt-in Plaintiffs were employed is as follows:

- 166 worked at the Roseburg, Oregon call center.  Of these 166 Plaintiffs, 101 were employed by Spherion for some period of time.

- 8 worked at the Nashville, Tennessee call center.  Of these 8 Plaintiffs, 4 were employed by Spherion for some period of time.

- 6 worked at the Oklahoma City, Oklahoma call center.[8]  Of these 6 Plaintiffs, 1 was employed by Spherion for some period of time.

---

[6]As stated in ¶ 1 of their Memorandum, Plaintiffs limit their lawsuit to sales representatives employed in Dell's consumer sales division, i.e., to CSRs.

[7] Although named as a Defendant in Plaintiffs' First Amended Complaint, Plaintiffs state at n. 1 of their Memorandum that they are moving for certification only against Dell.  Dell contracted with Spherion to provide assigned workers at its call centers.  (Koehn Depo. at 20:19-23). Spherion was the exclusive vendor for hiring assigned workers at Dell's Roseburg, Oregon call center from 2003 until mid-2006.  (*Id.* at 22:5-8).  109 of the 184 opt-in Plaintiffs were employed by Spherion for some period of time.  (Maurice Decl. ¶ 5).

[8] One of the six Plaintiffs formerly employed at the Okalahoma City, Oklahoma call center (Destiny Smith) failed to appear for her noticed deposition.  (*See* Certificate of Non-Attendance attached as Attachment B to Londa Decl.).

Page 3 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C.
§ 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

- 2 worked at the Round Rock, Texas call center.[9]  Of these 2 Plaintiffs, they both were employed by Spherion for some period of time.

- 1 worked at the McGregor, Texas call center and was employed by Spherion for some period of time.

- **There is no record of one opt-in.**

(Maurice Decl. ¶ 5).

Plaintiffs consistently testified that the only call center they had personal knowledge of was where they worked.  For example, Plaintiff Gregory testified as follows:

Q:    Do you have any personal knowledge about how things operated at the other call centers of Dell other than Roseburg [where you worked]?

A:    No.

(Gregory Depo. at 15:6-9).[10]

With one exception,[11] Dell classified all full time CSRs as "salaried non-exempt" employees and paid them under the FWW method of compensation prior to May 14, 2007, at the Roseburg, Oregon call center, until August 4, 2007, at the McGregor, Texas call center and until October 29, 2007, at all other call centers.  (Maurice Depo. at 44:15-16); (Powers Depo. at 39:15-22); (Maurice Decl. ¶ 6).  Thereafter, CSRs were classified as "hourly non-exempt" employees, and they were not paid under the FWW method of compensation.  (Powers Depo. at 38:14-24).

---

[9] Two of the six Plaintiffs formerly employed at Dell's Round Rock, Texas facility (Natalie Carroll and Tom Laws) did not appear for their noticed depositions on November 29, 2007.  (*See* Certificates of Non-Attendance attached as Attachment C to the Londa Decl.).

[10] *See also* (Kemp Depo. at 15:7-14); (Hillmick Depo. at 18:24-25; 19:1-2); (McNeil Depo. at 28:17-19); (Moorhead Depo. at 17:4-10); (Norman Depo. at 21:10-18); (Rooker Depo. at 15:7-15); (Romas Depo. at 21:11-14); (Beeman Depo. at 13:12-15); (Sedani Depo. at 16:4-7); (Trent Depo. at 11:8-12); (Lucas Depo. at 12:17-19); (Bruen Depo. at 24:12-14); (Damian Depo. at 17:25;18:1-2,6-11); (Eunice Smith Depo. at 8:1-16).

[11] The Roseburg, Oregon facility had a SRS queue that employed CSRs, including for a period of time named plaintiff, David Norman, who were paid on an hourly basis, not the fluctuating work week method.  (Maurice Decl. ¶ 8); (Norman Depo. at 14:21 to 15:23).

Page 4 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

Dell employs both part-time and full-time CSRs. (Maurice Depo. at 58:1-2). Part-time CSRs regularly work less than forty hours per week; full-time CSRs include employees who regularly work forty or more hours per week. (Maurice Depo. at 58:8-10). Part-time employees are paid on an hourly basis. They are not classified as "salaried non-exempt," and, accordingly, they are not and were never paid pursuant to the FWW method of compensation. (Rooker Depo. at 37:19-22); (Hillmick Depo. at 13:20-22).

## B.    STAFFING STRUCTURE

CSRs employed at Dell's call centers work under the supervision of multiple managers who exercise broad discretion. Each consumer call center has a site leader responsible for the overall management of the call center. (Koehn Depo. at 16:2-6). On average, between two and four Regional Sales Managers (RSM) report directly to the site leader. (Koehn Depo. at 16:7-9). Each RSM has an average of between four and six front line sales managers reporting to him or her. (Koehn Depo. at 15:19-21). Each front line sales manager directly supervises a group of twelve to eighteen CSRs. (Koehn Depo. at 15:2-9). A front line sales manager's responsibilities include conducting pre-shift meetings ("huddles"), and ensuring that CSRs met their attainment goals. A CSR usually works for numerous front line sales managers during his or her career.[12] Each front line sales manager exercises varying degrees of control and discretion. (Koehn Decl. ¶ 6).

CSRs' job duties varied depending upon work unit ("queue") assignment, geographic location, supervision, full-time/part-time status, what products they sold, whether they sold directly to customers or whether they responded to customers who called after a sale had been

---

[12] As examples, Plaintiff David Norman, employed from October 2004, until August 2, 2007, had eight different managers; (Norman's Resp. to Defendants' Interrogatory No. 3); Plaintiff Walter Romas, employed from November 2003, until May 2006, had six different managers; (Romas Depo. at 18:17-25); Plaintiff Chris Guyett, employed from March 2004, to December 2006, had five managers; (Guyett Depo. at 26:10-25; 27:1-10); Plaintiff Teresa Hillmick, employed from February 2005, to August 2007, had seven managers (Hillmick Depo. at 11:20-22), Moorhead had six different managers from February 15, 2006, until August 2, 2007 (Moorhead Depo. at 10:17-20).

Page 5 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C.
§ 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

00119869.DOC /                                    BARRAN LIEBMAN LLP
                                             601 SW SECOND AVENUE, SUITE 2300
                                                 PORTLAND, OR 97204-3159
                                        PHONE (503) 228-0500   FAX (503) 274-1212

made. (Maurice Decl. ¶ 7). Dell organizes its CSRs into three work units called "queues". Although the organization has evolved over time, for the last two years they have been divided into: (1) super queue; (2) premium queue; and (3) XPS or gold queue. (*Id.* at ¶ 8). CSRs in the SRS queue were never paid pursuant to the FWW method of compensation. (*Id.*) CSRs are classified according to their levels of experience and performance. (*Id.*)

C.    **TIMEKEEPING SYSTEMS**

Kronos is the timekeeping system used by Dell for payroll purposes at its call centers. Prior to November 1, 2005, CSRs entered and edited their time in Kronos on line. (Powers Depo. at 83:9-11). CSRs were regularly instructed as follows: "It is your responsibility to ensure your time card is updated…please be sure to review your time in Kronos." (*See, e.g.,* Employee KRONOS FAQ Guide-Consumer Organization attached as Attachment A to Maurice Decl.). Plaintiff Sean Beeman testified as follows:

Q:    And so there was a period of time when you had access to Kronos and you were supposed to go in and put your time in?

A:    Correct.

Q:    And could you edit if you made a mistake or went back a day later and you forgot to put some time, did you have the power to do that?

A:    Yeah.

· · ·

Q:    **And when you had the ability to change – I mean to enter the time yourself, were you paid for the – correctly at that time**?

A:    **At that time I entered my time correctly**.

(Beeman Depo. at 18:3-10, 14-17) (emphasis supplied). Plaintiff Walter Romas testified as follows:

Q:    **From your standpoint, during the time where it was manually entered, are you comfortable, except for the occasional human error, that you entered it accurately**?

A:    **Yes**.

Page 6 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

(Romas Depo. at 34:16-20) (emphasis supplied). Other Plaintiffs similarly testified. (Anderson Depo. at 31:14-22) ("we were responsible for entering our start and end time in Kronos").

Plaintiff Guyett testified as follows about CSR time entry prior to November 1, 2005:

> Q:    But when the payroll was still open, the manager had the power to change it or even you had the power to change it back, isn't that right?
>
> A:    That's correct.
>
> . . .
>
> Q:    So would you yourself change it? If you went in on—
>
> A:    Absolutely.

(Guyett Depo. at 43:6-9, 19-24).

After November 1, 2005, Plaintiffs were told that their telephone was their time clock. (Powers Depo. at 83:9-15; 84:9-13). Signing onto their telephones would be recorded as the employee's start time for the day in Kronos.[13] (Powers Depo. at 101:12-17; 102:1-5). The last telephone log off would be recorded as the employee's end time for the day in Kronos. (Powers Depo. at 106:12-21).

Both prior to and after November 1, 2005, Plaintiffs had the responsibility and ability to ensure the accurate recording of their time. (Gregory Depo. at 35:25; 36:1-7); (Romas Depo. at 39:15-23); (Anderson Depo. at 40:11-23, 25; 41:1-7). While they directly entered their time in Kronos before November 1, 2005, after that date they were instructed to review their Kronos entries and to contact their managers so their managers could correct any errors. Plaintiff Nate Gregory testified as follows:

---

[13] CSRs were instructed to log in via their telephones and then to immediately log out, thereby allowing CSRs to record their work start time and, thereafter, to work uninterrupted until the start of their scheduled shift. Customer calls would commence at the start of the CSR's regular shift. (Maurice Depo. at 69:10-14). If a CSR had work to do that did not involve use of the telephone after their regular shift ended, they were told to log out of call capacity. (Maurice Depo. at 68:6-20).

Page 7 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C.
§ 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

Q:     Now, when you had the ability to – after you lost the ability to put time in yourself and it was automatically populated, you still had the ability to view and see if it was accurate.  Correct?

A:     Yes.

Q:     **And in fact that was the responsibility you had; is that correct**?

A:     **Yes**.

(Gregory Depo. at 35:25; 36:1-7) (emphasis supplied).

After November 1, 2005, managers corrected and adjusted time entries in Kronos before the applicable pay period closed.  (Powers Depo. at 115:7-25; 116:1-4).  CSRs could also contact payroll analysts to correct time entries in Kronos before a pay period closed. (Powers Depo. at 115:7-25; 116:1-4).  Pay periods for the work week closed at 8:00 a.m. Tuesday.  (Powers Depo. at 115:17-20).

Even after a pay period closed and a paycheck had been received, incorrectly recorded time could be corrected both before and after November 1, 2005, by using a work order request ticket ("WOW").  (Powers Depo. at 118:7-9).  Dell mandated and encouraged the accurate recording of time.  (Maurice Depo. at 56:25; 57:1-8; 57:3-12; 61:24-25; 62:1-7); (Koehn Decl. ¶¶ 8-10, 12).  Once a payroll error was identified on a WOW and was approved by a manager, the error would be corrected and the CSR paid.  (Powers Depo. at 119:6-11).  Dell never discouraged the correction of time recording errors either via Kronos modification before a pay period's payroll deadline or thereafter with a WOW.  (Koehn Decl. ¶ 10).

While Plaintiffs acknowledged that Dell's policy required that they log directly into Kronos (before November 1, 2005) or on their phone (after November 1, 2005), some Plaintiffs testified that they failed to do so for various personal reasons.  Plaintiff Romas testified as follows:

Q:     When-what was your personal practice as to when you should sign into the phone when you came to Dell?

A:     I tried to do it when I got to work, but many times there was a huddle

involved, so you never got to do it until after the huddle.

Q:    **And that was just because the huddle was starting up and you just didn't have time to do it?**

A:    **Right.**

(Romas Depo. at 40:6-15) (emphasis supplied).  *See also* (Bruen Depo. at 40:11-25; 41:1-4); (Lucas Depo. at 22:6-9).

Craig Briscoe has performed a statistical analysis which refutes Plaintiffs' claims. Mr. Briscoe's conclusions include the following:

1.    CSRs' work hours per week fluctuated above and below 40 hours per week.

2.    The fixed weekly salaries paid to CSRs under the FWW method of compensation were not "docked," even when they had exhausted their paid time off and worked less than 40 hours in a week.

3.    CSRs' time entries in Kronos were corrected to ensure payment for all time worked.

4.    CSRs were paid for time worked prior to the start of their scheduled shifts.

(*See* Declaration of Craig Briscoe ("Briscoe Decl.") ¶ 5).

## III.    ARGUMENT

### A.    PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A FLSA COLLECTIVE ACTION AND FOR COURT AUTHORIZED NOTICE SHOULD BE DENIED BECAUSE PLAINTIFFS AND ALL MEMBERS OF THE PUTATIVE CLASS ARE NOT SIMILARY SITUATED.

Section 216(b) of the FLSA establishes two requirements for the certification of a collective action.  29 U.S.C. § 216(b) (2007); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 412 (D. Or. 2002).  "Members of the putative class must be 'similarly situated' and must provide 'consent in writing . . . in the court in which such action is brought.'"  *Sheffield*, 211 F.R.D. at 412 (citing 29 U.S.C. § 216(b)); *McElmurry v. U.S. Bank Nat. Ass'n.*, No. CV-04-642-HU, 2005

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

WL 2078302, at *11 (D. Or. July 29, 2005). Similarly situated plaintiffs must share "common issues of law and fact arising from the same alleged [illegal] activity." *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715, 2007 WL 707475, at *6 (N.D. Cal. Mar. 6, 2007) (citing *Hoffman La Roche Inc. v. Sperling*, 493 US 165 (1989)). Plaintiffs in this case cannot carry their burden of showing that Dell acted illegally on a class wide basis. *McElmurry v. U.S. Bank Nat. Ass'n.*, No. CV-04-642-HU, 2004 WL 1675925, at *10 (D. Or. Jul. 27, 2004); *Sheffield*, 211 F.R.D. at 413; *H & R Block Ltd. v. Housden*, 186 F.R.D. 399, 400 (E. D. Tex. 1999).

1.   **Plaintiffs and Putative Class Members Were Not Victims of a Common Plan or Policy That Violated the Law.**

In order to obtain conditional certification under the FLSA, Plaintiffs must show that: (1) Dell had a nationwide plan or policy; (2) Dell's plan or policy violated the FLSA; and (3) the potential class members were subject to and damaged by those policies. *Sheffield*, 211 F.R.D. at 416; *Thiessen v. Gen. Elec. Capital*, 267 F.3d 1095, 1102 (10th Cir. 2001).[14] Plaintiffs in this case cannot carry their burden of showing that Dell acted illegally on a class wide basis as required by the authority cited above. *See McElmurry*, 2004 WL 1675925, at *10; *Sheffield*, 211 F.R.D. at 413; *Housden*, 186 F.R.D. at 400.

Plaintiffs claim that three unlawful plans or policies adopted by Dell form the basis for their Motion: (1) misclassification of CSRs as "salaried non-exempt" and misapplication of the FWW method of compensation; (2) failure to properly account for and pay incentive compensation; and (3) consistently requiring CSRs to perform integral and indispensable job

---

[14] In addition, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Sheffield*, 211 F.R.D. at 416 (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)); *Thiebes v. Wal-Mart Stores, Inc.*, 1999 WL 1081357 at *1 (D. Or. 1999). Indeed, "[m]ore is needed than the mere fact that all proposed members have a possible FLSA claim . . . ." *Sheffield*, 211 F.R.D. at 416; *see McElmurry*, 2004 WL 1675925, at *10 ("unsupported allegations of widespread violations are insufficient"); *McElmurry*, 2005 WL 2078302 at * 11 ("**putative class members must share more than a common allegations that they were denied overtime or paid below the minimum wage**") (emphasis supplied).

00119869.DOC /
BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

activities without compensation. *See* p. 1 of Plaintiffs' Memorandum. Only Plaintiffs' first allegation concerns a plan or policy, and it did not violate the law. This is fatal to Plaintiffs' certification efforts. Each of Plaintiffs' three alleged plans or policies will now be discussed.

a.    **Dell's payment of CSRs under the FWW method of compensation[15] did not violate the law.**

Under the FWW method of compensation, an employee must receive a fixed weekly salary as compensation for all hours worked by the employee, whether above or below forty hours a week, as well as an overtime premium at half the employee's regular rate. 29 C.F.R. § 778.114(a) (2006). For an employer to utilize the FWW method of overtime compensation, there must be: (1) a clear mutual understanding between the employer and the employee that the fixed weekly salary is compensation for all hours worked in a work week; (2) a fixed weekly salary that is sufficient to provide compensation at a regular rate that is not less than the minimum wage; (3) a fluctuation in the employee's hours from week to week; and (4) the employee must receive a fixed salary that does not vary with the number of hours worked during the week. *Wilken v. Cascadia Behavioral Health Care, Inc.*, No. CV 06-195-ST, 2007 WL 2916482, at *12 (D. Or. Oct. 5, 2007).

In support of their contention that Dell improperly implemented the FWW method of compensation, Plaintiffs allege that: (1) no clear mutual understanding existed that CSRs would receive a weekly salary no matter how many hours they worked in a week; (2) when CSRs did not have paid leave time available, Dell made deductions from CSR's salaries when they worked fewer than forty hours in a week; and (3) the hours worked by CSRs did not fluctuate above and below forty hours a week. *See* ¶ 8 and ¶ 44 of Plaintiffs' Memorandum. As discussed below, all

---

[15] Dell paid CSRs employed at its call center in Roseburg, Oregon according to the FWW method of compensation prior to May 14, 2007. (Koehn Depo. at 36:8-15). Dell paid CSRs employed at its McGregor, Texas according to the FWW method of compensation until August 4, 2007, and at other sites until October 29, 2007. (Maurice Decl. ¶ 6).

Page 11 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

three of Plaintiffs' allegations are not supported by the evidence. Accordingly, Plaintiffs' Motion must be denied.

### (1)    A Clear Mutual Understanding Existed.

Courts in the Ninth Circuit require only that the parties reach a "**'clear mutual understanding' that while the employee's hours may vary, his or her base salary will not**." *Tumulty v. FedEx Ground Package System, Inc.*, No. C04-1425P, 2005 WL 1979104, at *4 (W. D. Wash. Apr. 19, 2005) (quoting *Valerio v. Putnam Assoc. Inc.*, 173 F.3d 35, 39-40 (1st Cir. 1999)) (emphasis supplied); *Wilken*, 2007 WL 2916482, at *12 ("employer and employee must share a 'clear mutual understanding' that the fixed salary is intended to compensate the employee for all hours worked no matter how many or how few"); *Dinella v. Friedmutter Group*, No. 2:05-cv-0938, 2007 WL 956899, at *2 (D. Nev. March 29, 2007).  "Neither the **regulation nor the FLSA in any way indicates that an employee must also understand the manner in which his or her overtime pay is calculated**." *Bailey v. County of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996) (emphasis supplied); *Griffin v. Wake County*, 142 F.3d 712, 717 (4th Cir. 1998) (stating that "**we do not find that the FLSA places the burden on the employer to hold an employee's hand and specifically tell him or her precisely how the payroll system works, particularly 'if that fact can be easily gleaned from employment policies, practices and procedures'**") (quoting *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1275 (4th Cir. 1996)) (emphasis supplied).  Thus, any claim that Plaintiffs did not understand the calculation is not only false, but is irrelevant to whether the required clear mutual understanding that Plaintiffs received a weekly salary regardless of the number of hours worked during a given week exists in this case.

The following evidence establishes the existence of a clear mutual understanding that CSRs would receive a fixed weekly salary no matter how many hours they worked in a work week:  (1) Pre-hire presentations and offer letters; (2) Paychecks and pay stubs; and (3) Training

Page 12 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN
        OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C.
        § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

during employment.

### (a)    Pre-hire presentations and offer letters

As with Dell's timekeeping policies, Dell employees received extensive training and information about how they were to be compensated. (Maurice Decl. ¶¶ 9-10).

Prior to accepting a job with Dell, CSRs were interviewed, received an offer packet, and attended an offer session where they were repeatedly told that their position was classified as "salaried non-exempt" and that their weekly salary was intended to compensate them for all hours worked with overtime paid at a half-time rate. (Maurice Decl. ¶ 11).

For some of the Plaintiffs, the FWW method of compensation was specifically described in the individual offer letters which they signed. For example, the offer letter given to Plaintiff Walter Romas states the following:

> Once the training and transition period has ended, your pay rate will be $296.54 per week, to be paid bi-weekly. **Your position is classified as salaried non-exempt fluctuating workweek and your salary is intended to compensate you for all hours worked. If you work more than 40 hours in a work week (Mon-Sun) you will be paid an additional half time regular rate payment for each overtime hour.**

*See* Exhibit 4, attached to Plaintiffs' Memorandum (emphasis supplied). Clearly CSRs who received offer letters containing this language had a clear mutual understanding that they would receive a fixed weekly salary as compensation for all hours worked in a given week. To date, discovery has revealed that at least 23 of the Plaintiffs employed at Dell's Roseburg, Oregon call center received offer letters containing the language quoted above.[16] (Maurice Decl. ¶ 12).

Offer packets that Plaintiffs and other CSRs received from Dell provide additional evidence of a clear mutual understanding that CSRs consistent with the FWW method of compensation. Offer packets distributed to CSRs during this time period stated the following:

---

[16] Plaintiffs' allegation at ¶ 14 of their Memorandum that Dell uses a "standardized template offer letter for all CSR's at all call centers" is obviously false. Indeed, the offer letters pertaining to Plaintiffs Norman and Romas attached to Plaintiffs' Memorandum are different.

Page 13 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

**HOW DOES THIS POSITION PAY**

**The Dell Roseburg Sales Representative position is classified as salaried non-exempt [f]luctuating work week structure intended to compensate you for all hours worked**.

(*See* Offer Packet attached as Attachment B to Maurice Decl.). Based on this language, it is irrefutable that CSRs had a clear mutual understanding of their base compensation.

(b)    <u>Paychecks and pay stubs</u>

As a matter of law, Plaintiffs and all CSRs obtained a clear mutual understanding that they would receive a weekly salary no matter how many hours they worked in a work week from their bi-weekly paychecks. Paychecks alone, even without additional evidence, establish the presence of a clear mutual understanding. *Davis v. Friendly Exp., Inc.*, No. 02-14111, 2003 WL 221488682, at *2 (11th Cir. Feb. 6, 2003) (affirming district court's judgment, that, **as a matter of law, the explanation provided on the weekly pay stubs received by Plaintiffs "satisfied the requirement that a clear mutual understanding exists"**) (emphasis supplied). Plaintiffs and other CSRs **"received a regular lesson-in the form of their paychecks-about how the fluctuating workweek plan operates."** *Griffin*, 142 F.3d at 716-17; *Saxton v. Young*, 479 F.Supp.2d 1243, 1257 (N.D. Ala. Mar. 14, 2007) (noting that "[t]he Eleventh Circuit has found that an **employee's pay stubs would be sufficient to establish the requisite mutual understanding necessary to establish a "clear understanding" between an employee and employee regarding the use of the fluctuating workweek method"**) (emphasis supplied); *Teblum v. Eckerd Corp. of Fla., Inc.*, No. 2:03CV495FTM33DNF, 2006 WL 288932, at *5 (M.D. Fla. Feb. 7, 2006) (same).

Plaintiffs received a copy of their pay stubs in the mail, and they could also access them on line. As examples, copies of several paychecks issued to Plaintiff Norman while he was being paid under the FWW method of compensation are attached hereto as Attachment C to Maurice Declaration. The paychecks show that Plaintiff Norman's weekly salary remained the

Page 14 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

00119869.DOC /                                  BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

same, regardless of the hours worked in a given work week.  (*See* explanation contained in the Maurice Decl. ¶ 14 and Attachment C).

As noted above, the FLSA does not require that an employee understand how his or her overtime is calculated for there to be a clear mutual understanding that while the employee's hours may vary, his or her base salary will not.  *See Bailey*, supra, and *Tumulty*, supra.  However, Plaintiffs' testimony about their paychecks clearly shows that they had a clear mutual understanding that while their hours varied, their salary did not.  Plaintiffs testified that, while being paid under the FWW method of compensation, they were paid a weekly salary no matter how many hours they worked in any given week, and that their regular rate of pay would vary depending on the number of hours they worked.  Plaintiff Beeman, for example, testified as follows:

> Q:  Now, if you'll work with me on the next part [on your paycheck], and this is just a hypothetical assumption, where it says "Total hours worked:  90 (assume 45 hours a week in a two week period)."  **That concept is pretty clear.  Correct?**
>
> Q:  Correct?
>
> . . .
>
> A:  **Yes, sir.**
>
> Q:  And then it takes the $692.31 as base salary.  That makes sense.  Correct?
>
> A:  Yes, sir.
>
> Q:  And then 90, you can see where the 90 total hours worked come from.  Correct?
>
> A:  Yes, sir.
>
> Q:  And then that gives you a regular rate of pay.  Is that concept straightforward?
>
> A:  **Yes. I fully understand that method**.
>
> . . .
>
> Q:  At the bottom it says, note, the base salary overtime premium is calculated weekly based on total hours worked and is paid on a weekly basis.  Do

Page 15 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

you understand that concept?

A:  **I understand what that statement is saying**.

(Beeman Depo. at 23:24-25; 24:1-3, 5-15; 25:22-25; 26:1) (emphasis supplied).  Plaintiff Robert

Sedani similarly testified:

Q:  The rate of pay for your overtime would vary.  I mean, you can see that by looking at the two rates of pay, overtime and overtime, how they differ?

A:  Yeah. I see that now, yes.

Q:  And you could have seen that by looking at your paycheck stub?

A:  Yes.

Q:  And is that something you understood, that your pay – the rates of pay for overtime would vary from week to week?

A:  I'd be making less, right.

Q:  The more you worked, the less you made for overtime?

A:  Yes.

Q:  You understood that?

A:  Yes.

(Sedani Depo. at 59:20-25; 60:1-10).[17]

A clear mutual understanding that CSRs received a weekly salary no matter how many

hours they worked in a given work week existed by virtue of the parties' course of conduct.

*Saxton*, 479 F.Supp.2d at 1257.  "[C]ourts have held that a course of conduct between the parties

where **employees continue to work and receive a fixed salary for varying numbers of hours**

**per week establishes the conditions necessary for use of the fluctuating workweek**

---

[17] *See also* the following similar representative testimony provided by Plaintiffs:  (Bruen Depo. at 14:15-22); (Romas Depo. at 16:8-12); (Lucas Depo. at 7:13-15) ("Do you know what I mean by fluctuating workweek?" "Yes"); (Moorhead Depo. at 57:6-14) ("And you knew you were not paid at time and a half but at half rate?" "Yes."); (Gregory Depo. at 67:17-25; 68:1-2); (Guyett Depo. at 80:10-11) ("I was paid half time for each overtime hour that was actually logged on my check"); (Dominguez Depo. at 49:12-14) ("And you knew you weren't getting time and a half?" "Yeah"); (Kemp Depo. at 68:22-25; 69:1); (Anderson Depo. at 47:9-13).

00119869.DOC /

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

method. . .'' Saxton, 479 F.Supp.2d at 1257; *see Wilken*, 2007 WL 2916482 at *14 (recognizing that a party's course of conduct may establish an implied agreement of a clear mutual understanding); *Anderson v. County of Kershaw*, 172 F.3d 862, 1999 WL 55182 at *2 (4th Cir. Oct. Feb. 8, 1999) (where employees "accepted a check every two weeks for the same non-fluctuating base amount," court held clear mutual understanding existed).

### (c)     Training during employment

Dell's sales compensation plan, which was posted on Dell's intranet and made specifically available to CSRs via the portal ***Livewire***, specified that CSRs were classified as "salaried non-exempt" employees and paid under the FWW method of compensation:

> Salaried nonexempt employees are paid overtime at a rate of 1.5x an hourly rate for overtime hours worked. **Such employees receive a salary as straight pay for all straight time hours worked. This salary covers whatever hours the job may demand in a certain week and employees receive the entire weekly salary even if they work fewer than 40 hours in a workweek. Salaried Nonexempt employees receive overtime premium compensation at one-half of the regular pay rate, where the regular pay rate is determined by dividing weekly salary by total hours worked**. This is different than other nonexempt payment arrangements where employees receive a fixed hourly rate and do not receive their usual weekly pay if they work fewer than 40 hours.

(*See* Koehn Depo. at 62:9-16; 70:18-20). *See also* Exhibit 20 to Plaintiffs' Memorandum.

While employed as "salaried non-exempt" employees paid according to the FWW method of compensation, CSRs attended numerous training sessions concerning compensation. CSRs were repeatedly told orally and via slide presentations that they were being paid a fixed weekly salary no matter how many hours they worked in a given week.

**It is clear from documents produced by Plaintiffs themselves during discovery that they were told during training that they were being paid a fixed weekly salary no matter how many hours they worked in a given week.** Plaintiffs produced documents entitled "Pay Stub Tutorial for Sales" and "How do you calculate overtime pay on my Base Salary?" during discovery. (*See* Londa Decl. ¶ 7 and Attachments D and E). The Pay Stub Tutorial for Sales provides clear examples of how the FWW method of compensation worked and how overtime

Page 17 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

00119869.DOC /

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

was calculated thereunder at a half time rate. The Pay Stub Tutorial for Sales states the following:

**What does Salary Non-Exempt Mean?**

Salaried Non-Exempt employees are guaranteed a base salary…

**Why do I have different rates of overtime pay?**

The base overtime premium is calculated weekly based on total hours worked and is paid on a bi-weekly basis.

The "How do you calculate overtime on my Base Salary" document produced by Plaintiffs contains detailed descriptions and examples of how CSRs were paid for overtime under the FWW method of compensation. Similarly, a slide presentation entitled "Consumer Compensation Plan Guidelines" which was utilized during training sessions states the following:

To understand the 'time and a half' calculation, remember you are already paid for your time in your biweekly salary paycheck. The additional payment for the 'half' is reflected below and paid in addition to your regular salary paycheck.

\*\*\*

NOTE: The base salary overtime premium is calculated weekly based on total hours worked and is paid on a biweekly basis.

(*See also* training materials attached as Attachment D to Maurice Decl.). Where, as here, employees are exposed to documents describing how they are to be paid, a clear mutual understanding exists. *Griffin*, 142 F.3d at 716-17; *Davis*, 2003 WL 21488682, at \*2.

Despite the overwhelming evidence described above that a clear mutual understanding was established by virtue of the training provided to CSRs during their employment, Plaintiffs allege at ¶ 45 of their Memorandum that "Dell cannot invoke the fluctuating work week method of payment because it provided erroneous information about how Dell calculated [CSRs'] compensation." To support this allegation, Plaintiffs attach as Exhibit 7 to their Memorandum an undated new employee orientation slide presentation which on its face shows that it was only utilized at Dell's Roseburg, Oregon call center. Plaintiffs assert that a page in Exhibit 7 labeled

Bates DELL 009559 "is inaccurate because it incorrectly calculated the base rate of pay [under the FWW method of compensation]."  While the slide does contain a mathematical error, testimony is clear that CSRs actually received a correct explanation of how the base rate was calculated when the slide was used.  (Beeman Depo. at 23:24-25; 24:1-3, 5-15; 25:22-25; 26:1); (Gregory Depo. at 35:14-24); (Anderson Depo. at 62:21-25; 63:1); (Battle Depo. at 17:23-25; 18:1-24).  Plaintiff Nate Gregory testified as follows:

> Q:    The note says, "Base salary overtime premium is calculated weekly based on total hours worked."  You understand that means instead of doing it on a two-week basis, like here, it has to be done on a weekly basis.  Is there anything you don't understand about that—
>
> A:    No.
>
> Q:    Sitting here today?
>
> A:    **No. I understand this here**.
>
> Q:    **So sitting here today you understand how this calculation is done**?
>
> A:    **Yes**.

(Gregory Depo. at 35:14-24) (emphasis supplied).  Furthermore, this slide (and other evidence, including the documents described above **which were produced by Plaintiffs** during discovery), clearly indicate that there was a clear mutual understanding that while employees' hours may vary, their base salary will not.  In fact, Exhibit 7 attached to Plaintiffs' Memorandum specifically states the following:

> If your position is classified as salary non-exempt fluctuating work week and your salary is intended to compensate you for all hours worked.  If you work more than 40 hours in a work week (Mon-Sun), you will be paid an additional half-time regular rate payment for each overtime hour.  NOTE: The base salary overtime is calculated weekly based on total hours worked and is based on a bi-weekly basis.

Regardless of the erroneous calculation contained within Exhibit 7 attached to Plaintiffs' Memorandum, there is no evidence that any Plaintiff or other CSR ever read and/or relied on Exhibit 7.  Further, the evidence is clear that the proper FWW calculation was always used when Dell paid CSRs.  (*See* Maurice Decl. ¶ 16); (Briscoe Decl. ¶ 5).  No CSR was ever improperly

Page 19 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

paid.  (*Id.*)

Finally, to the extent Plaintiffs might erroneously claim that a clear mutual understanding did not exist among certain, but not all, CSRs, a case by case inquiry would be required.  Such an inquiry is inefficient and makes collective action certification inappropriate.  *See Sheffield*, 211 F.R.D. at 412; *McElmurry*, 2004 WL 1675925, at *15; *Smith v. T-Mobile USA, Inc.*, No. CV-05-05274 ABC, 2007 U.S. Dist. LEXIS 60729 at **14-15 (C. D. Cal. Aug. 15, 2007).

**(2)    Deductions were not made from CSRs' weekly salaries when CRSs' worked less than 40 hours in a work week.**

Where an employer compensates employees under the FWW method of compensation, the employer may not make deductions from an employee's weekly salary for absences during a week that the employee worked some amount of time.  *Connee v. Speedee Cash of Mississippi, Inc.*, No. 06-60377, 2007 WL 2113627, at *2 (5th Cir. July 23, 2007); Wage & Hour Division, U.S. Dept. of Labor, Opinion Letter, 12 May 2006, 2006 WL 1488849.  An employer may, however, make deductions from an employee's vacation or sick leave bank, provided that no deductions are made from the employee's weekly salary.  *Hunter v. Sprint Corp.*, 453 F.Supp.2d 44, 60 (D.D.C. 2006) (citing Op. Letter of the Wage & Hour Div., 1999 WL 1002399)).

In ¶ 36 of Plaintiffs' First Amended Complaint, Plaintiffs allege that "Dell improperly deducts a [CSR's] pay when the [CSR] does not work a full schedule of hours."  At ¶ 44 of Plaintiffs' Memorandum, Plaintiffs incorrectly allege that "Dell deducted from [CSR's] salaries when they worked few than 40 hours in a week and they did not have leave or vacation."  Plaintiffs cannot point to a single instance where this occurred.  (*See* statistical analysis contained within Brisco Decl. ¶ 5).  Patti Powers, Finance Manager III testified as follows:

> Q:    Are you aware if Dell ever deducts from the salary it pays to consumer sales representatives?
>
> A:    No. As long as there is time worked, the full salary is paid.
>
> Q:    And when you say as long as there is time worked, the full salary is paid, time -- in what time frame?

Page 20 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

00119869.DOC /                          **BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

A:      In that week.

***

Q:      You told me that from a payroll perspective, if a sales representative works in a given workweek, but doesn't necessarily work a full week, they'll be paid for the whole week. Correct?

A:      That's correct.

Q:      And do you believe that's true even if a sales rep is out of paid time off?

A:      Yes.

Q:      Or is out of personal business allowance?

A:      Yes.

(Powers Depo. at 63:25; 64:1-7; 70:5-14.)

Plaintiffs' paychecks and pay stubs also refute Plaintiffs' allegation. While pay stubs show the number of hours worked by a CSR above and below 40 in a given week, they also show that all hours below 40 hours were reversed to enable CSRs to always receive his or her weekly salary as required by the FWW method of compensation, no matter how many hours he or she worked in a given week. (*See* pay stub examples and explanation contained in Maurice Decl. ¶¶ 14, 17-18, Attachments C and E). A review of all payroll files for CSRs at all of Dell's call centers revealed no cases where CSRs' weekly salaries were docket when they worked less than 40 hours, regardless of the existence or exhaustion of time off balances. (Briscoe Decl. ¶ 5).

Plaintiffs contend that language contained in a Dell New Hire Orientation slide presentation, attached to Plaintiffs' Memorandum as Exhibit 7, is proof that Dell made deductions from CSRs' weekly salaries in situations where they worked less than 40 hours in a given week and had no available leave time. The language relied on by Plaintiffs merely explains Dell's policy regarding absenteeism. It does not, as Plaintiffs allege at ¶ 46 of their Memorandum, advise CSRs "that time away from work would be unpaid if they did not have leave time available" in all circumstances." Even if it could be read to so advise CSRs, Dell

Page 21 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

could legally under the FWW method of compensation decline to pay CSRs with no available leave time for weeks during which they failed to perform any work. *Sampson v. Apollo Resources*, 242 F.3d 629, 637 (5th Cir. 2001) ("fixed salary [under the FWW method of compensation] is not . . . paid for weeks where the employee performs no work."). As indicated above, the evidence is uncontroverted that Dell **never** docked the weekly salary of any CSR without leave time who worked less than 40 hours during a given week while CSRs were being paid according to the FWW method of compensation. (Maurice Decl. ¶¶ 3, 14, 16-18); (Koehn Decl. ¶ 5); (Briscoe Decl. ¶ 5).

In support of their allegation that Dell improperly made deductions from CSRs' weekly salary during weeks in which CSRs had no available leave time and worked less than 40 hours, Plaintiffs refer to Exhibit 8 attached to their Memorandum. Plaintiffs allege that Exhibit 8 is inconsistent with the FWW method of compensation. *See* ¶ 47 of Plaintiffs' Memorandum.

Exhibit 8 states that "in circumstances where there is a business issue driving lack of available work, an employee has the following options: leave early and go unpaid, leave early and use [personal business allowance] or vacation up to 10 or 12 hours if the employee has not already worked 40 hours in a work week, remain at work doing alternative assignments up to a complete shift if work is available." *See* Dell Bates No. 003403 contained within Exhibit 8 attached to Plaintiffs' Memorandum. Plaintiffs contend that the first option listed above is inconsistent with the FWW method of compensation. Exhibit 8 is dated June 25, 2007. Accordingly, it was created **after** Dell no longer paid CSRs employed in Roseburg, Oregon pursuant to the FWW method of compensation and, significantly, there is no evidence that any Plaintiff or CSR ever reviewed or relied on Exhibit 8. Dell reclassified all Roseburg, Oregon CSRs as "hourly non-exempt" employees in May 2007. (Koehn Depo. at 36:8-23); (Maurice Depo. at 43:15-20). In any event, the evidence is clear that in no instance did Dell ever dock a CSR's weekly pay during weeks where a CSR worked less than 40 hours, even if he/she had no

Page 22 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

00119869.DOC /

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

available leave time.  (Powers Depo. at 63:25; 64:1-7; 70:5-14); (Maurice Decl. ¶¶ 3, 14, 16-18); (Koehn Decl. ¶ 5); (Briscoe Decl. ¶ 5).

At ¶ 48 of their Memorandum, Plaintiffs refer to an undated slide presentation which is entitled "OKC Sales Attendance and Adherence Policy" and attached to their Memorandum as Exhibit 9.  There is no evidence that any Plaintiff or CSR ever reviewed or relied on Exhibit 9.  By its title, Exhibit 9 could have no possible application beyond Dell's Oakalahoma City call center.  Through this document, Plaintiffs allege that "Dell advised [CSRs] in its Oklahoma City, Oklahoma call center that if they got sick and missed a day of work and they had no personal leave time available, then 'this would be unpaid time and would be treated as unapproved.'"  *See* ¶ 48 of Plaintiffs' Memorandum.  Plaintiffs allege that this is inconsistent with the FWW method of compensation.  *Id.*

Exhibit 9 attached to Plaintiffs' Memorandum does not support Plaintiffs' position, and it has absolutely no application or relevance in this case for four reasons.  First, it is a draft document which was never implemented in any of Dell's consumer call centers.  (Maurice Decl. ¶ 19).  Second, the fourth bullet point on page 8 of Exhibit 9 states that it was "posted on Live Rock."  Live Rock was never used in the consumer division and had no application to CSRs.  (*Id.*)  Third, page 9 of Exhibit 9 references a roll out date of "Monday, March 1."  The last March 1 that fell on a Monday was March 1, 2004.  CSRs were on a point system for attendance purposes at that time, and, at all times subsequent thereto, CSRs in Oklahoma City have been covered by specific other attendance policies, not Exhibit 9 attached to Plaintiffs' Memorandum.  (*Id.*)  Fourth and finally, the language relied on by Plaintiffs from Exhibit 9 is simply inconsistent with the facts.  As established above, in no instance did Dell ever dock a CSR's weekly pay during weeks where a CSR worked less than 40 hours, even if he/she had no available leave time.  (Powers Depo. at 63:25; 64:1-7; 70:5-14); (Maurice Decl. ¶¶ 3, 14, 16-18); (Koehn Decl. ¶ 5); (Briscoe Decl. ¶ 5).

Plaintiffs also attach to their Memorandum as Exhibit 10 a document entitled "Attendance Guidelines Roseburg" which is dated January 1, 2002. This document was produced by Plaintiffs during discovery. They were not produced by Dell. (Londa Decl. ¶ 8). Dell cannot verify this document's authenticity and, in any event, it was clearly not in effect at any time relevant in this case. (Maurice Decl. ¶ 20); (Koehn Decl. ¶ 7).

Exhibit 11 attached to Plaintiffs' Memorandum is a slide deck entitled "Kronos Overpayment Procedures for Salary Non-Exempt Employees." This was a draft document prepared by individuals in the CCO (call center operations), but was never approved or implemented in Dell's consumer call centers. (Maurice Decl. ¶ 21). It has absolutely no relevance in this case.

<strong>(3)     Although required, the work hours of CSRs fluctuated<br>above and below 40 hours a week.</strong>

At ¶ 36 of Plaintiffs' First Amended Complaint, Plaintiffs allege that "the working hours of [CSRs] do not fluctuate from week to week because [CSRs] customarily work a regular schedule of hours." At ¶¶ 44 and 52 of their Memorandum, Plaintiffs' contend that Dell improperly implemented the FWW because (a) the hours worked by CSRs "did not actually fluctuate above and below forty hours a week" and (b) "class members are scheduled to work substantial overtime on a regular basis." Plaintiffs' allegations lack legal and factual support.

Contrary to Plaintiffs' allegation, the law does <u>not</u> require as a condition of an employer's use of the FWW method of compensation that an employee's hours actually fluctuate above and below forty hours a week. "**[N]either existing authority nor the language of 29 C.F.R. § 778.114(a) supports Plaintiffs' argument that an employee's hours [must] fluctuate above and below 40 for the fluctuating workweek method of computing overtime compensation to apply**." *Mitchell v. Abercrombie & Fitch Co.*, 428 F.Supp.2d 725, 735 (S.D. Ohio 2006) (emphasis supplied); *see Griffin*, 142 F.3d at 715; *Condo v. Sysco Corp.*, 1 F.3d 599, 602 (7th Cir. 1993).

Plaintiffs argue at ¶ 52 of their Memorandum that CSRs' work hours did not fluctuate as required by the FWW method of compensation because they allegedly worked a regular schedule of hours containing substantial overtime. Plaintiffs' argument has been expressly rejected by the courts. In *Mitchell*, 428 F.Supp.2d at 735, the Court held as follows:

> Plaintiffs seem to argue that their hours did not fluctuate because Abercrombie intended that they work a regular schedule, broken down by days and shifts. **Courts have also rejected the argument that the term "fluctuate" means irregular or unpredictable hours**.

(*Id.*) (citations omitted) (emphasis supplied). *See also*, *Evans v. Lowe's Home Centers, Inc.*, No. 3:CV-03-0438, 2006 WL 1371073, at *3 (M.D. Pa. May 18, 2006), **("Plaintiffs argued that since they [regularly] worked in excess of forty hours a week, the fluctuating work week method did not apply...Neither the language of 29 C.F.R. 778.114(a) supports [the Plaintiffs'] point of view nor does the existing authority."** (citations omitted) (emphasis supplied). In *Roy v. County of Lexington,* 948 F.Supp. 529, 531 (D.S.C. 1996), the court stated the following:

> The employees . . . argue that Section 778.114 is not applicable because the workweek did not 'fluctuate' for purposes of the regulation. As they note, they worked on a regularly recurring three-day cycle of twenty-four and one-half hours on and forty-seven and one-half hours off. Thus, even though the regular hours they worked in a week were not the same, their regular hours over a period of weeks were predictable, and they could rely on the cycle to determine when they would work on any particular date in the future. **However, the fact the cycle recurs does not mean that the hours do not fluctuate.** It is not necessary for regular hours to be sporadic for the regulation to be applied; **it is sufficient that the regular hours vary from one workweek to another**, as they do here. The court therefore rejects this argument.

(Emphasis supplied).

Even if the law required fluctuation of Plaintiffs' hours above and below forty hours a week for proper implementation of the FWW method of compensation, which it does not, Plaintiffs' hours clearly did fluctuate above and below forty hours per week. (Briscoe Decl. ¶ 5). CSRs at all of Dell's call centers worked 40 hours in only approximately 2% of all weeks. CSRs worked between 38 and 42 hours in approximately 19% of all weeks. CSRs worked less than 38

hours and more than 42 hours in approximately 81% of all weeks. (Briscoe Decl. ¶ 5 and Attachment B). Proof that CSRs' hours fluctuated above and below 40 hours per week is also provided by Plaintiffs' paychecks and pay stubs. (*See* Maurice Decl. ¶ 14, 17 and Attachments C and E).

### 2. Dell's Incentive Policies Are Not Unlawful.

At ¶¶ 58-61 of their Memorandum, Plaintiffs vaguely allege that several of Dell's incentive policies are unlawful. While Plaintiffs' conclusory allegations cannot be used to show that Dell's incentive policies are unlawful (*Prosser v. Safeco Ins. Co.*, No. CV 00-1512-BR, 2001 WL 34043385, at *6 (D. Or. June 18, 2001)),[18] out of an abundance of caution, Dell will respond to Plaintiffs' allegations as best it can.

Plaintiffs allege at ¶ 61 of their Memorandum that "Dell failed to properly 'true up' overtime compensation based on Airpoints and other incentive compensation." However, Dell treats Airpoints and SPIFs[19] as non-discretionary bonuses[20] which Dell "trues ups" for overtime

---

[18] Courts have repeatedly found that plaintiffs must support a request for collective action certification through admissible factual evidence, not conclusory allegations. *Housden*, 186 F.R.D. at 400 (affidavits containing unsupported, conclusory allegations are insufficient), 186 F.R.D. at 400 (affidavits containing unsupported, conclusory allegations are insufficient); *Haynes v. Singer Co.*, *Inc.*, 696 F.2d 884, 887-88 (11th Cir. 1983) (counsel's unsupported, conclusory allegations are insufficient); *Aguirre v. SBC Communications*, *Inc.*, No. H-05-3198, 2006 Dist. LEXIS 22211 at *19 (S.D. Tex. Apr. 11, 2006) (brief and conclusory statements in plaintiffs' complaint and motion for notice are insufficient; *Hall v. Burk*, No. 3:01-CV-2487-H, 2002 U.S. Dist. LEXIS 4163 at *7-8 (N.D. Tex. Mar. 11, 2002) (unsupported assertions of widespread violations are insufficient).

[19] SPIF incentives are described in greater detail in Exhibit 19 attached to Plaintiffs' Memorandum.

[20] Discretionary bonuses are those "'[s]ums paid in recognition of services performed during a given period if ... both the fact that payment is to be made and the amount of the payment are determined at the sole **discretion** of the employer at or near the end of the period and not pursuant to any prior contract.'" *Donohue v. Francis Servs., Inc.*, No. Civ.A.04-170, 2005 WL 1155860, at *1 (E.D. La. May 11, 2005); *see Acton v. City of Columbia, Mo.*, No. 03-4159-CV-NKL, 2004 WL 2152297, at *3 (W.D. Mo. Sept. 10, 2004) (The "FLSA requires that **all remuneration for employment should be included and then exempts only discretionary bonuses. . .[by] implication nondiscretionary bonuses are included in the definition of the regular rate of pay**") (emphasis supplied).

Page 26 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

00119869.DOC /          BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

calculation purposes on a quarterly basis consistent with 29 CFR § 778.119 (2006). This regulation states:

> If the calculation and payment of the commission cannot be completed until sometime after the regular pay day for the workweek, the employer may disregard the commission in computing the regular hourly rate until the amount of commission can be ascertained.
>
> ***
>
> **When the commission can be computed and paid, additional overtime compensation due by reason of the inclusion of the commission in the employee's regular rate must also be paid. To compute this additional overtime compensation, it is necessary, as a general rule, that the commission be apportioned back over the workweeks of the period during which it was earned**.

(Emphasis supplied).

Plaintiffs state at ¶ 61 of their Memorandum that "Dell admitted that it erroneously failed to include the value of Airpoints in overtime compensation that it paid to [CSRs]." Plaintiffs attach as Exhibit 21 to their Memorandum a letter dated August 15, 2007, from Dell's counsel. In his letter, Dell's counsel explained why certain CSRs received extra compensation. The extra compensation was to correct an inadvertent failure by Dell with respect to the inclusion of Airpoints for overtime calculation purposes. Dell's counsel explained:

> The payment reflects a correction to Dell's quarterly overtime "true-up" practice. As you know, Dell's Roseburg Sales Representatives were paid in part on commission. Each quarter, Dell would true up the overtime paid to its employees, meaning that the employees were paid additional overtime based on an increase in the hourly rate caused by the incentive payments. Dell recently discovered that an error resulted in a calculation for the Airpoints program not being included in the true up. Accordingly, Dell decided to voluntarily correct the error---resulting in the payment described above to Mr. Romas. Similar payments were made to others.

Dell's correction of its error was completely lawful. *See* 29 C.F.R. § 778.119; *Wisnewski v. Champion Healthcare Corp.*, No. Civ. A 3-96-72, 2000 WL 1474414, at *8 (D.N.D. Jan. 11, 2000).

Plaintiffs also allege in conclusory fashion at ¶ 58 of their Memorandum that Dell's SPIF incentive policy is unlawful. SPIF incentives are a way for CSRs to earn additional compensation by selling particular items, including items of third party vendors. (Maurice Decl. ¶ 22). While Plaintiffs do not specify how they claim Dell's SPIF incentives are unlawful, Plaintiffs appear to criticize the eligibility requirements established by Dell. Dell treats SPIF awards as non-discretionary bonuses, and eligibility criteria like those established by Dell are completely legal. (*See* Dept. of Labor Wage and Hour opinion, FLSA 2005-4-NH, July 5, 2005 attached as Attachment F to the Londa Decl.) (DOL found that bonus program established by third party vendor was non-discretionary bonus that should be included in the employee's regular hourly rate for overtime calculation purposes)); Technical Assistance for Employers, *Commissions, Questions and Answers,* http://www.oregon.gov/boli (where "commission cannot be calculated until after the regular payday, the employer may disregard it until the amount can be determined. [Oregon] state law does not require the inclusion of commissions for computing overtime").

In ¶ 59 of their Memorandum, Plaintiffs criticize Dell's awarding of a limited number of trips to CSRs for outstanding performance because a recipient "must be employed in good standing" to receive a trip, no cash or price value will be given if a CSR awarded a trip is unable to take it and because Dell reserved the right to cancel trips with or without notice or cause. This criticism is completely unfounded and irrelevant to Plaintiffs' claims. Trips are a form of a discretionary bonus which is legally permitted. Employers are legally permitted to establish their own eligibility rules. Moreover, less than 50 trips per year are awarded by Dell. (Maurice Decl. ¶ 23). Plaintiffs' allegation that Dell's awarding of trips is illegal is without merit and, in any event, because of the limited number of trips awarded, cannot be a justification for collective action certification.

Page 28 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

**3.    Plaintiffs' "Off the Clock" Claims Do Not Establish That a Common Plan or Policy Violated the Law and, in Any Event, Such Claims Would Require Individualized Findings Inappropriate for Collective Action Treatment.**

Virtually identical form declarations executed by Plaintiffs Norman, Romas, Beeman, Crader, Damian, Goodacre, Lucas, Mozelle, and Trent are attached to Plaintiffs' Memorandum. These declarations contain conclusory allegations in support of Plaintiffs' claims at ¶¶ 53-57 of their Memorandum that CSRs attended pre-shift "huddles," worked through lunch and performed post-shift activities without compensation.  *See* ¶ 54 of Plaintiffs' Memorandum.  Dell objects to these declarations.   They should not be considered by the Court.   Vague allegations are inadmissible to prove the facts asserted.  *Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2006 WL 2604592, at *4 (C.D. Cal. Aug. 23, 2006) (citing *Nieves-Villanueva v. Sota-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997)); *Prosser*, 2001 WL 34043385, at *6 (noting that "conclusory testimony is not sufficiently specific to be admissible and . . . does not provide admissible facts"); *Johnson v. Clarke*, No. C05-5401FDB, 2007 WL 1601292, at *8 (W.D. Wash. June 1, 2007) ("Conclusory, nonspecific statements in affidavits are not sufficient and "missing facts" will not be "presumed") (citing *Lujan v. Nat'l. Wildlife Federation*, 497 U.S. 871, 888-89 (1990)); *Miles v. Vail*, No. C06-5319, 2007 WL 2570442, at *5 (W.D. Wash. Sept. 4, 2007) (where plaintiffs provided only "conclusory, nonspecific statements in affidavits," court held that these statements were not sufficient and granted summary judgment in favor of defendants).

It is obvious that Plaintiffs' off the clock allegations are individual claims.[21]  They are not the result of a plan or policy by Dell to not pay CSRs for work performed.  In fact, the evidence is clear that Dell's policy was that all CSRs must be paid for all time worked.  As set forth above, throughout their employment with Dell, Plaintiffs were (both before and after November 1,

---

[21] In fact, the Declarations of former CSRs Seth Norris (¶¶ 3-6) and Ellen Sutton (¶¶ 3-6), filed herewith, completely refute the allegations stated in conclusory fashion in the declarations submitted by Plaintiffs which are referenced above.

Page 29 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

00119869.DOC /

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

2005) responsible for the accurate recording of their time.[22]  *See* Part IIC, *supra*.  In *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (D. Or. 1981), the District Court of Oregon held as follows:

> An **employer must have an opportunity to comply with the provisions of the FLSA [and] where [the] acts of an employee prevent an employer from acquiring knowledge . . . of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of the [FLSA].**

646 F.2d at 414-15 (emphasis supplied).

*See also McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998) (noting that **employee's failure "to record claimed [uncompensated] time is fatal to a later claim for such time**) (emphasis supplied); *Basco v. Wal-Mart Stores, Inc.*, No. Civ. A. 00-3184, 2004 WL 1497709, at *8 (E.D. La. Jul. 2, 2004) (court denied plaintiffs' motion for conditional certification and noted that defendant would be permitted to raise as a defense that plaintiffs failed to take advantage of Wal-Mart's system for accurately recording time); *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2792218, at *4 (M.D. Tenn. Sept. 26, 2006) (citing *Forrester* and stating that an employee "**who sues for additional compensation . . . may not seek such compensation if she deliberately falsified her hours without the knowledge or encouragement of her employer**").  Plaintiffs had the responsibility and ability to accurately record all of their time.  Accordingly, they cannot claim that their off the clock allegations are the result of a plan or policy by Dell.  Plaintiffs' "off the clock" allegations are not appropriate for collective action certification.

---

[22] Employees were regularly instructed that "**[i]t is your responsibility to ensure your time card is updated accordingly… please be sure to review your time in Kronos. . . .**" *See* Employee KRONOS FAQ Guide-Consumer Organization (attached as Attachment A to Maurice Decl.) (emphasis supplied).  Plaintiffs also received presentations with the following instructions " **make sure that all your hours for the current pay period are correct. . .If you see any corrections that need to be made please email your manager as well as the RoseburgKronosHelpdesk with the correct dates and LOG IN / LOG OUT times. . .Remember ensuring that Kronos is correct is your responsibility**.  (*See* Koehn Decl. ¶ 8 and Kronos Approval Process at 2, attached as Attachment B).

Even if Plaintiffs' "off the clock" allegations could be construed as an attack on a plan or policy implemented by Dell, which they cannot for the reasons stated above, such allegations require individualized inquiries which are not appropriate for collective action certification. In *Mertz v. Treetop Enterprises, Inc.*, No. CV-96-B-1208-S, 1999 U.S. Dist. LEXIS 18386, at *9 (N.D. Ala. Mar. 3, 1999), the court found that plaintiffs were not similarly situated because they sought to certify a class of employees that:

> Reported directly to and under the direct supervision of numerous different unit managers assigned to each restaurant unit, who were each individually responsible for the implementation of appropriate management policies, practices and procedures and were individually responsible to insure each hourly employee was compensated in accordance with the FLSA.

CSRs worked in different queues, under the supervision of many different managers[23] (each exercising varying amounts of discretion and control) and at five different geographic locations. The manager expectation sheets attached as Exhibit 12 to Plaintiffs' Memorandum illustrate these differences.

Because Dell's policy has always required payment for all time worked, any deviation from that policy would occur on a manager-by-manager and CSR by CSR basis. Isolated instances of work possibly being performed "off the clock" are not appropriate for collective certification. *See Basco*, 2004 WL 1497709, at *7; *Smith*, 2007 U.S. Dist. LEXIS 60729 at **14-15.

Resolution of Plaintiffs' and potential Plaintiffs' "off the clock" claims necessarily would require highly inefficient individualized treatment that is inappropriate for collective action. *Lawrence v. City of Philadelphia*, No. 03-CV-4009, 2004 WL 945139, at *2 (E.D. Pa. Apr. 29, 2004); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363 (M.D. Ala. 1999). Courts routinely have denied motions to send FLSA notices in "off-the-clock" cases where individualized findings would be necessary. *See, e.g., Diaz v. Electronics Boutique of Am., Inc.*, No. 04-CV-

---

[23] As set forth in n. 12 above, each CSR could have between four and nine different managers.

Page 31 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

08402, 2005 U.S. Dist. LEXIS 30382, at **16-17 (W.D. N.Y. Oct. 13, 2005) (holding that off the clock claims were "too individualized to warrant collective action treatment" where individualized inquiry of each potential class member would be necessary); *Basco*, 2004 WL 1497709, at *7 (same); *Petty v. Wal-Mart Stores, Inc.*, 773 N.E.2d 576, 580, 582 (Ohio App. 2d Dist. 2002), *not accepted for review*, 772 N.E.2d 1203 (Ohio 2002), (same); *see also Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 560 (Tex. App.-- Houston [14th Dist.] 2002, writ denied) (finding that individualized determinations regarding the circumstances surrounding any off-the-clock work would be necessary); *Smith*, 2007 U.S. Dist. LEXIS 60729 at *20 (where plaintiffs failed to show nothing more than sporadic violations, as opposed to a "common impetus," court held they were not similarly situated).

Plaintiffs' testimony confirms the individualized nature of their "off the clock" allegations. Plaintiffs testified that CSR timekeeping practices varied dependent on the manager a CSR reported to.[24]

---

[24] Plaintiff Gregory testified as follows:

> Q:    And when you had the ability to [enter your own time], you would go in and put the time that you started and the time that you finished?
>
> . . .
>
> A:    We would put in the times that our managers kind of instructed us to put in.
>
> Q:    And who instructed you?
> A:    **Depends on the manager.**
>
> Q:    Some managers would tell you to put it in one way?
>
> A:    Some were more lenient.
>
> . . .
>
> Q:    So depending on who you were working for, your time would be more or less accurate from your perspective?
>
> A:    **It varied on the manager definitely.**

(Gregory Depo. at 22:16-18, 21-25;23:1; 25:2-5) (emphasis supplied). Plaintiff McNeil testified as follows:

> Q:    **Did it matter which manager you worked on—worked for? Did they have different rules for how you needed to record your time?**

Page 32 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

Plaintiffs' claim that their alleged off the clock work activities included attending pre-shift huddles, working through their lunch breaks, and working from home. *See* Plaintiffs' Memorandum ¶¶ 54-56 and 62-66. CSRs would often attend pre-shift huddles fifteen to thirty minutes prior to the start of their scheduled shifts.[25] (Sedani Depo. at 37:6-13) (Guyett Depo. 29:15-18; 53:22-25). While Dell's policy required payment for all time worked, including time spent attending pre-shift huddles, **Plaintiffs testified that managers issued a wide variety of instructions** related to the recording of time spent attending pre-shift huddles.[26]

---

A:    **Yes.**

(McNeil Depo. at 40:1-4). *See also* (Kemp Depo. at 15:7-13); (Dominguez Depo. at 21:12-16) ("[Managers] had their own way of doing things"). Plaintiff Aaron Anderson similarly testified:

Q:    Can you remember any of the differences?

A:    I can't remember a specific difference, but **each manager kind of had their own way that they wanted you to do things, and timekeeping was one of them.**

Q:    Okay. And that would be – so each time you'd get a new manager you'd kind of have to learn how they wanted things done?

A:    To a certain degree, yes.

(Anderson Depo. at 62:5-14) (emphasis supplied). *See also* (Gregory Depo. at 25:2-5); (Guyett Depo. at 29:3-10).

[25] Statistical information refutes Plaintiffs' allegation that they performed work prior to the start of their scheduled shifts without compensation. (*See* Briscoe Decl. ¶ 5 and Attachment E, summarized in Section II of this Response).

[26] Some Plaintiffs testified that some managers instructed them to not record more than fifteen minutes of time prior to the scheduled start of their shift. (Gregory Depo. at 25:2-5); (Guyett Depo. at 24:11-19; 29:11-21); (Anderson Depo. at 30:3-10); (Moorehead Depo. at 31:3-6). Some Plaintiffs' testified that they did not log in at all prior to the start of their scheduled shift. (Rooker Depo at 46:15-18); (Kemp Depo. at 29:9-11). Others Plaintiffs testified that they were instructed by some managers to log in fifteen minutes prior to the start of their scheduled shifts. Some Plaintiffs testified that they were told to log in prior to the start of huddles, but they were unable to do so for personal reasons, e.g., they arrived late, or were otherwise in a hurry to attend the pre-shift huddle. (Romas Depo. at 40:6-15); (Bruen Depo. at 40:11-25); (Lucas Depo. at 22:6-9).

Page 33 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

Plaintiffs assert at ¶ 56 of their Memorandum that the declarations attached to their Memorandum "support [Plaintiffs'] contention that they performed work during unpaid meal periods." The declarations simply state in conclusory fashion that these nine Plaintiffs at one time or another worked through all of their one hour lunch breaks and that they were "routinely" unpaid for such work.[27] It is clear, however, that any instances of Plaintiffs not receiving compensation for time spent working through all or part of their one hour lunch breaks were not the result of a Dell plan or policy. In fact, ¶¶ 40 through 43 of Plaintiffs' Memorandum describe the procedures under which CSRs would be compensated should they work through all or part of their one hour lunch break. In ¶ 43 of Plaintiffs' Memorandum, Plaintiffs state the following:

> Both before and after November 2005 conversion [from FWW], **it is the responsibility of consumer sales representatives** to alter their time records to reflect the shortened lunch period. Dell does not automatically alter the time records for all consumer sales representatives to reflect the shortened lunch period.

(Emphasis supplied.)

Plaintiffs' allege at ¶ 66 of their Memorandum that Dell allowed CSRs to perform work from home via Citrix without compensation. Plaintiffs' allegation that they worked from home fails and cannot be used to support certification of a collective action because CSRs were at all times under Dell policy responsible for the accurate entry of their time. *See* Part IIC, *supra*. Dell cannot be responsible for CSRs' failure to accurately record their time. *See Forrester*, 646 F.2d at 414 (D. Or. 1981). In addition, Dell's policy instructed employees **not** to perform work from home in order to avoid uncompensated work time. (Koehn Decl. ¶ 11); (Bruen Depo. at 49:11-21); (Lucas Depo. at 25:9-14). Plaintiff Lucas testified as follows:

---

[27] Conclusory allegations cannot support Plaintiffs' request for certification. *Prosser*, 2001 WL 34043385, at *6 ("conclusory testimony is not sufficiently specific to be admissible and . . . does not provide admissible facts); *Housden*, 186 F.R.D. at 400 ("unsupported assertions of widespread FLSA violations . . . [does] not satisfy the movant's 216(b) burden"); *Haynes*, 696 F.2d at 887 (court denied notice under 216(b) where court had only unsupported assertions that FLSA violations were widespread); *Johnson*, 2007 WL 1601292, at * 8 ("conclusory, nonspecific statements in affidavits are not sufficient . . .").

Page 34 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

Q:     You weren't allowed to work from home, were you?

A:     No.

Q:     And that was the case the entire time you worked here?

A:     Correct.

(Lucas Depo. at 25:9-14).

At ¶ 65 of their Memorandum, Plaintiffs' allege that Dell became aware of three CSRs at the Roseburg, Oregon call center who were working from home without compensation via Citrix. While Dell has consistently sought to prohibit CSRs from working at home (Koehn Depo. at 81:11-15), the limited number of examples of this allegedly occurring brought to the Court's attention by Plaintiffs does not justify certification of a collective action.

**B.     CERTIFICATION OF A CLASS ACTION UNDER OREGON LAW/RULE 23 SHOULD BE DENIED.**

Plaintiffs Motion seeks class certification pursuant to Rule 23 of an Oregon opt-out class.[28] Such a class would overlap with the opt-in collective action Plaintiffs seek under the FLSA.

Plaintiffs fail to cite a single decision of this Court concurrently conditionally certifying both a FLSA collective action and Oregon law/Rule 23 class action; for good reason, there is no such decision.[29] Indeed, each time this Court has considered the issue of concurrent

---

[28] Oregon courts employ the requirements of Federal Rule of Civil Procedure 23 when adjudicating class actions under Oregon law. Or. R. Civ. P. 32.

[29] Plaintiffs cite *Garay v. RDO-Bos Farms*, No. 06-174-KI, 2007 WL 273604 (D. Or. Jan. 23, 2007) (the actual Westlaw caption reads: *Ramirez v. RDO-Bos Farms, LLC*) and *In re Farmers Ins. Exch. Claims Representatives Overtime Pay Litigation*, No. MDL 1439, 2003 WL 23669376 (D. Or. May 19, 2003) as examples where this "Court has previously certified opt-in FLSA actions with opt-out class actions under Rule 23." (Plaintiffs' Memorandum, p. 30.) Perhaps Plaintiffs should have more carefully read *Ramirez* and *In re Farmers*. If they had, they would have found that in *Ramirez* the class certification motion was granted months after conditional certification of the collective action, and that in *Farmers* the parties **stipulated** to class certification. Judge King's decision to certify a class of 100 in *Ramirez*, when he refused to do the same for a putative class of over 400 in *Thiebes*, was attributable to the migrant nature of class members who may have been fearful to join the FLSA collective action. There is no evidence here that any CSR is fearful of opting into this case. In fact, 184 have done so.

Page 35 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

certifications, it has rejected it. *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802-KI, 1999 WL 1081357 (D. Or. Dec.1, 1999); *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802-KI, 2002 WL 479840 (D. Or. Jan. 9, 2002); *Wright v. Household Intern*, No. CV-03-1172-PA, 2004 WL 1526157 (D. Or July 7, 2004); *Gonzalez v. Select Onion Co. LLC*, 2007 WL 1989698 (D. Or. 2007). Significantly, Plaintiffs artfully fail to cite, much less discuss or attempt to distinguish, this Court's decisions in *Thiebes*. As Plaintiffs well know, in *Thiebes* this Court not once, but twice, denied motions to certify a state law class action under circumstances which are in all material aspects similar to the present case.

This Court may certify a class action under Rule 23 only after conducting a "**rigorous analysis**" to determine whether the requirements for bringing such an action have been satisfied. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (emphasis supplied). The standard for certification of a Rule 23 class action is more stringent than the standard applied to the certification of a collective action under the FLSA. As the *Thiebes* court explained:

> A plaintiff who opts in presumably has decided that the benefits of joining the class outweigh any benefits of bringing an individual action. . . . In addition, the due process protections of FRCP 23 are not as crucial when absent class members are not bound by the judgment.

*Thiebes*, 1999 WL 1081357 at *2 (citing *Daggett v. Blind Enterprises of Oregon, et al.*, No. 95-421-ST, 1996 U.S. Dist. LEXIS 22465 (D. Or. Apr. 18, 1996)).

The party seeking class certification bears the burden of proving each of the elements of Rule 23(a) and that at least one of Rule 23(b)'s requirements have been met by a preponderance of the evidence. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007)*; Thiebes*, 1999 WL 1081357 at *4.[30]

---

[30] A court may not reverse this burden by presuming class certification is proper and requiring a defendant to show cause why the court should not certify a class. *In re American Medical Systems*, 75 F.3d 1069, 1086 (6th Cir. 1996). Before certifying a class for class action treatment under Rule 23, a court "must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the class certification issues." *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996) (citing *Manual for Complex Litigation*, § 30.11 (3d Ed. 1995)). Plaintiffs must provide the court with more then mere

Page 36 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

The Court should deny Plaintiffs' Motion to conditionally certify a class action under Oregon law/Rule 23 for the following reasons:  Plaintiffs have not and cannot establish that this Court should exercise supplemental jurisdiction over individuals who have not opted into the current action.  Plaintiffs have not and cannot satisfy each of the requirements of Rule 23(a); Plaintiffs have not and cannot satisfy any of the requirements of Rule 23(b).

**1.     Plaintiffs Cannot Satisfy the Requirements of Rule 23(a).**

**a.     Plaintiffs cannot satisfy the numerosity requirements of Rule 23(a)(1).**

In *Thiebes v. Wal-Mart Stores*, No. 98-802-KI, 1999 WL 1081357, at *3 (Dec. 1, 1999), Plaintiffs sued Wal-Mart, alleging that Wal-Mart encouraged its employees to work off the clock and that it did not pay employees for all hours worked in violation of the FLSA.  The *Thiebes* plaintiffs also contended that Wal-Mart violated Oregon wage and hour laws.  Although the court granted conditional certification of the opt-in class under the FLSA, it denied plaintiffs' motion for opt-out Rule 23 class certification, stating that it was "**prudent to defer certifying a class action to see how many employees do, in fact, choose to opt in to the collective action**." *Id.* (emphasis supplied).  Plaintiffs subsequently renewed their motion after notice was issued. *Thiebes*, 2002 WL 479840 at *1.  In rejecting plaintiffs' renewed motion, the District Court for the District of Oregon stated as follows:

> A key prerequisite to the certification of a class action is that the putative class is so numerous that joinder of all members is impracticable.  **Notwithstanding plaintiffs' argument that I should use a figure in excess of 15,000 individuals to apply this standard, I believe the appropriate figure on which to focus is the 425 individuals who decided to opt into the collective action.  The fact that such a small percentage of the employees opted in is telling (by plaintiffs' calculations, the percentage is 2.7%) and cautions against a finding that joinder is impracticable, especially in light of the fact that the notice of the FLSA collective action included a description of plaintiffs' theory of the case that is the same as their basis for liability under the state law claims.**

allegations.  *East Texas Motor Freight Systems, Inc. v. Rodriguez*, 431 U.S. 395, 405-406 (1977).  At a minimum, the court must have before it "sufficient materials" and "evidence" beyond plaintiffs' complaint, in order "to form a reasonable judgment on each requirement" of Rule 23.  *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975).

Page 37 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

*Id.* at *3 (emphasis supplied).

Plaintiffs allege in this case that there are 5,000 potential class members. However, only 184 CSRs have to date opted into this case under the FLSA. Here, as in *Thiebes*, certification of an Oregon opt-out Rule 23 class action in this case "would bring in many more employees than those who believe they were actually aggrieved by [Dell's] alleged conduct." *Thiebes*, 2002 WL 479840 at *3.

In *Thiebes*, this Court held that 425 opt-in plaintiffs was an insufficient number to establish that joinder was impracticable. Here, over one year after the filing of this much-ballyhooed lawsuit (*see* February 13, 2007 article in *Roseburg News Review* attached to Baumgart Decl. as Exhibit A), only about a third of that number has opted into this case. Plaintiffs have failed to show that the proposed Rule 23 class under Oregon law is so numerous that joinder is impracticable. Indeed, any such claim is belied by the fact that 184 individuals have joined the current lawsuit for the price of a stamp. Using the same rationale as this Court used in *Thiebes*, Plaintiffs' Motion to certify an opt-out class under Oregon law/Rule 23 should be denied.

### b.   <u>Plaintiffs cannot satisfy the commonality test Rule 23(a)(2).</u>

The commonality prong of Rule 23(a)(2) requires that Plaintiffs demonstrate that common questions of law and fact exist. *Thiebes*, 1999 WL 1081357 at *4. As demonstrated above, Plaintiffs' allegations in this case necessarily and unavoidably require an individualized inquiry into each Plaintiffs' understanding of how they were paid as well as the hours they were allegedly not paid for. In addition, the numerous violations of Oregon law alleged by Plaintiffs (*see* n. 2 of this Response) do not apply to all potential Oregon law/Rule 23 class members. Plaintiffs cannot satisfy the commonality requirement of Rule 23(a)(2). *See Mike v. Safeco Ins. Co. of Am.*, 223 F.R.D. 50, 53 (D. Conn. 2004) (denial of both the FLSA and Rule 23 classes where court would be required to conduct an individualized inquiry with respect to each class

Page 38 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN
    OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C.
    § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

00119869.DOC /                          **BARRAN LIEBMAN** LLP
                                    601 SW SECOND AVENUE, SUITE 2300
                                        PORTLAND, OR  97204-3159
                                PHONE (503) 228-0500   FAX (503) 274-1212

member to determine class membership).

In this case, Plaintiffs' Oregon law claims inherently require an intense, individualized inquiry. For example, Plaintiffs allege that defendant violated Oregon state law by failing to provide necessary rest breaks (*see* Count IV of Plaintiffs' First Amended Complaint). When Plaintiff Norman was asked how many breaks he thought he was owed for, he responded, "I have no idea." (Norman Depo. 75:15-17). Similarly, Plaintiffs' alleged breach of contract claims will require individualized inquiries under Oregon law. Calculation of damages will also require separate determinations based upon different rates of pay over varying lengths of time, in numerous settings.

Given all of the variables present in this case among the potential claims, Rule 23's commonality requirement is not satisfied, and Plaintiffs' class certification motion must be denied. *See, e.g.*, *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998) (stating that "under such circumstances an action conducted nominally as a class action would 'degenerate in practice into multiple lawsuits, separately tried'").

## 2.    Plaintiffs Cannot Satisfy Any of the Requirements of Rule 23(b).

As indicated above, in addition to meeting all of the requirements of Rule 23(a), Plaintiffs must satisfy one of the three requirements set out in Rule 23(b) for this case to be certified as an opt-out class action under Oregon law/Rule 23. At page 27 of their Memorandum, Plaintiffs assert that they satisfy only the requirements of Rule 23(b)(3). Plaintiffs do not satisfy the requirements of (3) or any other provisions of Rule 23(b).[31]

---

[31] A class action is maintainable under Rule 23(b)(1) if "prosecution of separate actions ... would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class . . ." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001).

In order to certify a class pursuant to Rule 23(b)(1), there must be "(1) a risk that separate actions will in fact be brought if a class action is not permitted, and (2) a possibility that individual suits will expose the opposing party to a serious risk of being put in a conflicted position." *Berry v. Baca*, 226 F.R.D. 398, 405 (C.D. Cal. 2005).

Page 39 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN
      OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C.
      § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

**a.    Plaintiffs cannot meet the superiority requirement established by Rule 23(b)(3).**

Certification under Rule 23(b)(3) requires a finding that "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members" and that "a class action is *superior* to other available methods for the fair and *efficient adjudication* of the controversy." *Liberty Lincoln Mercury v. Ford Marketing*, 149 F.R.D. 65, 76 n.21 (D.N.J. 1993) (emphasis original). This standard requires Plaintiffs to make an even greater showing of commonality than that required under Rule 23(a)(2). *Id.* As discussed above, Plaintiffs' allegations do not meet the less rigorous standard for commonality under Rule 23(a)(2). Accordingly, Plaintiffs certainly do not meet the heightened standard under Rule 23(b)(3).

Plaintiffs have not met their burden of showing that a class action is superior to other available means that may more efficiently resolve any controversy. To the contrary, because Plaintiffs' Oregon law claims require a person-by-person, day-by-day review of the facts and circumstances of each putative class members' hours worked, the payment or non-payment for such hours, the employment circumstances in various departments under the supervision of numerous managers, Dell's adherence to various Oregon law based requirements (which are not

---

In this case, separate actions are not likely, and Dell would not be at serious risk of being put in a position of conflict. In fact, as established above, Dell no longer pays any CSR under the FWW method of compensation. In addition, injunctive relief is not even available to CSRs formerly employed at Dell's closed call centers in Roseburg, Oregon and McGregor, Texas and at Dell's Oklahoma City, Oklahoma call center CSRs are no longer employed.

Rule 23(b)(2) requires that Plaintiffs show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief…with respect to the class as a whole." Class actions brought pursuant to Rule 23(b)(2) **can include claims for monetary damages so long as such damages are not the "predominate" relief sought**, but instead are "secondary to the primary claim for injunctive or declaratory relief." *See Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1186 (9th Cir. 2007); *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003). *See also Zinser*, 253 F.2d at 1195 ("Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive relief."). As established above, Dell's call center in Roseburg, Oregon where the named Plaintiffs were employed has been closed. Accordingly, injunctive relief would not be appropriate much less predominate. Certification under Rule 23(b)(2) is not appropriate.

---

Page 40 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

requirements of the FLSA) and the personal experiences and alleged damages of each member, certification of a class under Rule 23(b)(3) would be a logistical and management nightmare. Furthermore, Plaintiffs have failed to provide any detailed explanation of how they envision this case proceeding as an opt-out Rule 23 class action under Oregon law. Plaintiffs' failure to articulate a detailed class action litigation plan provides yet another reason to deny class certification. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Plaintiffs cannot satisfy the superiority requirement of Rule 23(b)(3) for the additional reasons that (1) sending both an opt-in notice under the FLSA and an opt-out notice under Oregon law/Rule 23 to potential class members is confusing; and (2) FLSA collective actions are inherently incompatible with Rule 23 class actions. *See Riddle v. Nat'l Security Agency, Inc.*, No. 05 C 5880, 2007 WL 2746597, at **3-4 (N.D. Ill. Sept. 13, 2007) (denying certification under Rule 23 for these reasons).

Plaintiffs' proposal to issue both an opt-in notice under the FLSA and an opt-out notice under Oregon law/Rule 23 would be contradictory and confusing. In *Thiebes*, 1999 WL 1081357, at *4 (D. Or. 1999), this Court stated the following in denying an Oregon law certification of a class under Rule 23:

> At this time, I decline to certify a class under Rule 23 for a number of pragmatic reasons: First, I believe it would **be difficult to fashion an effective notice to perspective class members that explains their opportunity to opt into the FLSA collective action as well as their choice to opt-out of the class action. Second, it is prudent to defer certifying a class action to see how many employees do, in fact, chose to opt into the collective action.** At that point, I will be best equipped to determine if joinder is impracticable and, thus, whether a class action may be appropriate. Likewise, at that juncture, the variety of workers and their experiences at Wal-Mart can be ascertained and I will be better able to determine if the named plaintiffs are adequate class representatives. Third, Wal-Mart has expressed its intent to move against some, if not all, of plaintiffs' state law claims and it should have an opportunity to do so before the proposed class is certified. **Finally, I make the general observation that, while plaintiffs have articulated a unifying theory of why hourly workers throughout Oregon may have not been paid all of the overtime pay that they were due (and that such a theory is sufficient to find that hourly employees are similarly situated for purposes of FLSA), plaintiffs have not demonstrated that a class action is the superior method for resolving the numerous state law claim (where varying**

Page 41 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

**elements) that they have pled.  Plaintiffs' motion for class certification is denied**.

*Id.* (emphasis supplied).

In *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 464 (N.D. Cal. 2004), plaintiff tour directors sued their employer under the FLSA and California law.  They moved to certify these claims as a collective action under the FLSA and as a class action under California law/Rule 23.  The court granted plaintiffs' motion to certify the FLSA collective action, but refused to certify the California law/Rule 23 class because plaintiffs did not satisfy the superiority requirement of Rule 23 (b)(3).  *Id.* at 464, 469-70.  The court found that the plaintiffs' attempt to "prosecute their pendent state law claims as part of the FLSA class action . . . **undercuts all the Rule 23 (b)(3) superiority factors**." *Id.* at 469 (emphasis supplied).  The court in *Leuthold* also found it likely that certification would result in "the somewhat peculiar situation of a large number of plaintiffs in the state law class who have chosen not to prosecute their federal claims." 224 F.R.D. at 470.[32]  In *Muecke v. A-Reliable Auto Parts and Wreckers, Inc.*, No. 01 C 2361, 2002 U.S. Dist. LEXIS 11917 (N.D. Ill. June 21, 2002), the court likewise denied the plaintiffs' request to certify a collective action and a class action.  The *Muecke* Court found that FRCP 23(b)(3) certification of state-law wage class "founders on the requirement that plaintiffs show that 'a class action is superior...'" *Id.* at *5.  Specifically, the court found that "[b]ecause all of the companies' present and former employees will have the chance to decide whether to [opt-in to the § 216(b) case, and because those who wish to do so will be before the Court, it makes no real sense to the Court to certify a class that will automatically include all of the employees unless they opt out." *Id.* at *6.  It makes no more sense here.

---

[32]  In *Ramirez*, 2007 WL 273604, at *2, this Court found the *Leuthold* decision unpersuasive "given the background of [the] class members and [the fact] that class members may have been fearful to join the FLSA collective action."  However, Judge King's holding in *Ramirez* is distinguishable.  The background of the Plaintiffs in this case (CSRs) and the background of the *Ramirez* Plaintiffs (farm workers) are completely different.  Further, Plaintiffs are clearly not fearful of joining a FLSA collective action in this case as 184 Plaintiffs have already opted in, compared to only 26 opt-ins in *Ramirez*.

For all of these reasons, Plaintiffs' Motion to certify a class action under Oregon law/Rule 23 should be denied.

**3.    There is no Basis for the Court to Assert Supplemental Jurisdiction Over Individuals Who do not Opt-in to a Collective Action.**

This Court's only basis for jurisdiction over Plaintiffs' Oregon law claims is supplemental jurisdiction. 28 U.S.C. § 1367. A court's exercise of supplemental jurisdiction is not mandatory. It is appropriate for a court to decline supplemental jurisdiction in the following circumstances:

(1)    Where the state claim raises a novel or complex issue of state law;

(2)    Where the state claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3)    Where the district court has dismissed all claims over which it has original jurisdiction; or

(4)    Where there are exceptional circumstances or other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).

This Court should decline to exercise its supplemental jurisdiction because the state law claims will predominate over the federal claims and because the inherent conflict between the FLSA opt-in class versus state law opt-out class provides compelling reasons for declining jurisdiction.

In *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003), as here, plaintiffs sought certification of both an opt-in collective action under the FLSA and an opt-out class action under state law/Rule 23. In reversing a district court's certification of a class under state law/Rule 23, the court reversed the exercise of supplemental jurisdiction because the state law claims would require substantial "additional testimony and proof … beyond that required for the FLSA action" *Id.* at 310. Underlying *De Asencio* was the court's recognition of "Congress's express preference for [FLSA] opt-in actions" and fears that plaintiffs were seeking to permit a

Page 43 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

"federal tail … to wag what is in substance a state dog[33]" *Id.* at 310-11.

Here, as in *De Asencio*, consideration of plaintiffs' state law class claims would require "additional testimony and proof … beyond that required for the FLSA action." Here, as in *De Asencio*, Plaintiffs seek to have a "federal tail … to wag what is in substance a state dog." Here, as in *De Asencio*, the Court should decline to exercise supplemental jurisdiction and deny Plaintiffs' Motion for class certification of Plaintiffs' Oregon law based claims.

Consistent with the above, United States District Court for the Middle District of Pennsylvania issued an Order on February 19, 2008, denying Rule 23 certification of a Pennsylvania law wage and hour lawsuit which also sought certification of a collective action under the FLSA. The Court stated the following in *Woodard v. FedEx Freight East, Inc.*, No. 3:cv-06-1968, 2008 WL 471552; at **4, 12 (M.D. Pa. Feb. 19, 2008):

> The question of whether a plaintiff may assert an FLSA collective action and a state law class action concurrently in federal court must be analyzed through the lens of supplemental jurisdiction (citations omitted). In this regard, the Court finds a compelling reason to decline jurisdiction. *See* 28 U.S.C. § 1367(c)(4). Specifically, the Court agrees with FedEx Freight that the opt-in regime of § 216(b) is "inherently incompatible" with the opt-out mechanism of Rule 23. Moreover, the Court concludes that, where a plaintiff asserts an FLSA collective action and a state law Rule 23 class action, both of which are predicated on the same facts and seek to vindicate identical statutory rights, but the state law lacks an opt-in requirement, the simultaneous prosecution of these claims will undermine the objectives Congress sought to achieve by amending § 216(b) to require written consent to become party plaintiffs to FLSA actions. Under the circumstances, jurisdiction must be declined (citations omitted). Because Mr. Woodard's state law class action allegations are immaterial, FedEx Freight's motion to strike will be granted.

*** 

---

[33] Other courts have reached similar results. For instance, in *Jackson v. City of San Antonio*, 220 F.R.D. 55 (W.D. Tex. 2003), plaintiffs alleged that defendant had failed to pay them overtime in violation of the FLSA and Texas law. While the court granted conditional certification of a FLSA collective action, it declined to exercise supplemental jurisdiction over the law claim asserted under Texas law *Id.* at 60. *See also Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592, 598-604 (E.D. La. 2002) (denying FRCP 23 class certification of a state-law claim alleging that that defendant forced employees to work off-the-clock); *Lopez*, 93 S.W.3d at 554-62 (reversing grant of class certification in similar Texas-law action); *Petty*, 773 N.E.2d at 578-82 (affirming denial of class certification in Ohio-law action).

Page 44 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

In summary, the Court finds that simultaneous prosecution of Mr. Woodard's FLSA collective action and MWA class action will frustrate congressional intent and circumvent § 216(b)'s opt-in requirement. Because this constitutes a compelling reason to decline jurisdiction over the MWA class claim, the Court will grant FedEx Freight's motion to strike the Rule 23 class allegations.

For all of the above reasons, the Court should decline to exercise its supplemental jurisdiction over individuals who do not opt-in the FLSA collective action.

**C.      IF A COLLECTIVE ACTION IS CERTIFIED UNDER THE FLSA, WHICH IT SHOULD NOT BE, IT SHOULD BE LIMITED TO FORMER FULL-TIME EMPLOYEES EMPLOYED AT DELL'S NOW CLOSED ROSEBURG, OREGON CALL CENTER DURING THE FEBRUARY 8, 2004, THROUGH AUGUST 4, 2007, TIME PERIOD.**

Despite failing to demonstrate that Plaintiffs are similarly situated to the other potential class members, Plaintiffs seek court authorization to send notice to more than 5,000 current and former CSRs employed or formerly employed by Dell at its five call centers throughout the United States.  If a collective action is certified, it should be limited to full-time CSRs employed at Dell's now closed Roseburg, Oregon call center from February 8, 2004, through August 2, 2007.  Key factors which support such a limitation on any certified collective action include the following:

      1.      The named Plaintiffs are former Roseburg, Oregon, CSRs, and over 90 percent of the opt-in Plaintiffs are former Roseburg, Oregon CSRs.

      2.      An analysis of the many Oregon state law claims asserted by the Oregon Plaintiffs[34] can best be adjudicated in a collective action involving only Plaintiffs who were employed at Dell's Roseburg, Oregon call center.

      3.      Because Dell's Roseburg, Oregon call center is closed, injunctive relief is not an issue for Plaintiffs and potential Plaintiffs who were employed there.

      4.      Part-time CSRs were never paid under the FWW method of compensation.  Full-time CSRs are no longer paid under the FWW method of compensation.

---

[34] *See* n. 2 of this Response.

Page 45 - DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23

5.      Plaintiffs who have been deposed have uniformly testified to having no knowledge of pay and other policies at call centers where they were never employed.  *See* Section IIA of this Response.

6.      Spherion employed, at least for some period of time, 109 of the 184 Plaintiffs who have opted into this lawsuit.  (Maurice Decl. ¶ 5).

7.      The pendency of *Davis, et al. v. Dell Inc. et al,* in federal court in Okalahoma.  *See* n. 4 of this Response and Attachment A to Londa Decl.

Courts have routinely limited the scope of collective actions after considering factors similar to the above.[35]

**D.      IF A COLLECTIVE ACTION UNDER THE FLSA AND/OR A CLASS ACTION UNDER OREGON LAW/RULE 23 IS CERTIFIED, WHICH THEY SHOULD NOT BE, DELL SHOULD NOT BE REQUIRED TO PRODUCE EMPLOYEE AND/OR FORMER EMPLOYEE ADDRESSES, TELEPHONE NUMBERS AND SOCIAL SECURITY NUMBERS.**

At page 1 of their Motion, Plaintiffs "pray that the Court direct Dell to provide a computer readable data file containing the names, last known mailing addresses, last known telephone numbers, Social Security numbers, work locations and dates of employment for all putative members of both the proposed FLSA conditional collective action and the Rule 23 class action."  In the event that the Court certifies a collective action under the FLSA and a class

---

[35] *Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216, 220-21 (D. Conn. 2003) (court denied notice where it would have to "engage in an ad hoc inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar..."; *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1318 (M.D. Ala. 2002) (court limited conditional certification to employees within the state of Alabama where the plaintiff produced competent evidence of actual violations); *Clark v. Dollar Gen. Corp.*, No. 3:00-0729, 2001 WL 878887, at *5 (M.D. Tenn. May 23, 2001) (court limited certification where the "class of assistant store managers which plaintiffs seek to represent contain[ed] individual employees who have worked at different stores, in different states, for different store, district and regional managers, and most likely in different working conditions"); *Harper*, 185 F.R.D. at 363 (denying nationwide notice due to lack of factual support for Plaintiffs' claim of widespread wrongdoing); *Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 949 (M.D. Fla. 1994) (denying company-wide notice where employees at only one facility were similarly situated); *Hall*, 2002 U.S. Dist. LEXIS 4163, at *9 (denying motion for certification of FLSA collective action and court-ordered notice where Plaintiff presented only conclusory allegations, as "t[h]is Court has a responsibility to avoid the "stirring up" of litigation through unwarranted solicitation" (internal quotation marks and citations omitted).

00119869.DOC /
BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

action under Oregon law/Rule 23, Dell should not be required to produce the requested data because of the "privacy concerns implicit in information derived from personnel records." *Torres v. CSK Auto, Inc.*, No. EP-03-CA-113(KC), 2003 WL 24330020, at *3 (W.D. Tex. Dec. 17, 2003) (where FLSA plaintiffs sought a computer readable data file containing names, addresses, Social Security numbers and telephone numbers of all potential opt-in plaintiffs, the court denied plaintiffs' request based on privacy concerns).[36]

As an alternative, Dell proposes the utilization of the procedure described in *Torres*, where the court ordered the defendant to issue notice to the certified class as follows:

> Defendant shall send a letter to all [employees] employed since January 2000, notifying such employees of the specific FLSA violation alleged and providing that any affected employee may "opt-in" to the present action within forty-five days of mailing by contacting plaintiffs counsel at a designated address. The letter shall be in a form letter approved by plaintiffs' counsel, with form fields completing the name and address of employees and a respond [sic] deadline forty-five days beyond the date of mailing. Defendant will not be ordered to produce detailed information of its [employees], but will instead provide a list of all employees to whom the letters were sent, the date of mailing, which should be same day unless good cause is shown for a longer period and a certificate of mailing signed by counsel of record. This procedure should both avoid the promulgation of confidential information outside the office and preclude concerns inherent in the direct solicitation of prospective clients by attorneys through mass mailings.

2003 WL 24330020 at *3.

---

[36] *Hens v. Client Logic Operating Corp.*, No. 05-CV-381S, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006) (court denied plaintiffs request for social security numbers due to privacy concerns); *Humphries v. Stream Int'l, Inc.*, 2004 U.S. Dist. LEXIS 220465, *12 (N. D. Tex. Feb. 13, 2004) (court denies plaintiffs' request for potential opt-ins telephone numbers, dates of birth, and social security numbers due to privacy concerns); *Robinson-Smith v. Gov't Employees Inc., Co.*, No. 01-1340 (PLF), 2001 U.S. Dist. LEXIS 25516, **8-9 (D.D.C. Nov. 10, 2001) ("Social Security numbers of potential class members are not necessary in order to issue the notice").

00119869.DOC /
BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

## IV.    <u>CONCLUSION</u>

For all of the above reasons, Plaintiffs' Motion should be denied in its entirety. Alternatively, Plaintiffs' Motion to Certify a Class Under Oregon Law/Rule 23 should be denied and a collective action under the FLSA certified which is limited to former full-time CSRs employed by Dell from February 8, 2004, through August 2, 2007, at its now closed Roseburg, Oregon call center. In addition, Plaintiffs' request that Dell be ordered to produce employee and/or former employee addresses, telephone numbers, and social security numbers should be denied.

DATED this 29th day of February, 2008.

BARRAN LIEBMAN LLP

By   *s/Brenda K. Baumgart* _____
      Richard N. VanCleave, OSB No. 80392
      Brenda K. Baumgart, OSB No. 99216
      Telephone: (503) 228-0500
Attorneys for Defendants Dell Inc., and Dell
Marketing USA, L.P.

and

Jeffrey C. Londa, *Pro Hac Vice*
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
500 Dallas Street, Suite 3000
Houston, TX 77002-4709
Phone: 713-655-5750
Facsimile: 713-655-0020
E-mail: Jeff.Londa@ogletreedeakins.com
*Of Counsel for Defendants*

Michael W. Fox, *Pro Hac Vice*
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
301 Congress Avenue, Suite 1250
Austin, TX 78701
Phone: 512-344-4700
Facsimile: 512-344-4701
E-mail: Mike.Fox@ogletreedeakins.com
*Of Counsel for Defendants*

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500 FAX (503) 274-1212

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of February, 2008, I served the foregoing **DEFENDANTS DELL INC. AND DELL MARKETING USA, L.P.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(b) AND FEDERAL RULE OF CIVIL PROCEDURE 23** on the following parties at the following addresses:

Derek C. Johnson
Douglas G. Schaller
Johnson, Clifton, Larson & Schaller, P.C.
975 Oak Street
Citizen's Building, Suite 1050
Eugene, Oregon 97401

George A. Hanson
Matthew L. Dameron
Stueve Siegel Hanson Woody LLP
330 West 47th Street, Suite 250
Kansas City, MO 64112

ATTORNEYS FOR PLAINTIFFS

Craig J. Capon
Christine Nesbit
Harrang Long Gary Rudnick P.C.
360 East 10th Ave., Suite 300
Eugene, OR 97401-3248

Samuel T. McAdam
Alfred L. Sanderson, Jr.
Joel Van Parys
Seyfarth Shaw LLP
400 Capitol Mall, Suite 2350
Sacramento, CA 95814-4428

ATTORNEYS FOR DEFENDANT
SPHERION CORPORATION

By causing the same to be:   ✗ e-mailed   ○ mailed   ○ hand delivered   ○ faxed to them a true and correct copy thereof.

s/*Brenda K. Baumgart*
Brenda K. Baumgart